RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0235P (6th Cir.)
File Name: 02a0235p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

SHERRY JONES,
  *Plaintiff-Appellant,*

  *v.*

No. 01-5149

UNION COUNTY, TENNESSEE;
UNION COUNTY SHERIFF'S
DEPARTMENT,
  *Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 99-00518—James H. Jarvis, District Judge.

Argued: May 3, 2002

Decided and Filed: July 16, 2002

Before: NELSON, SILER, and CLAY, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** Arthur F. Knight, III, BECKER, THOMFORDE, BROWN & KNIGHT, Knoxville, Tennessee, for Appellant. Dean B. Farmer, HODGES, DOUGHTY & CARSON, Knoxville, Tennessee, for Appellees. **ON BRIEF:** Arthur F. Knight, III, Samuel W. Brown, BECKER, THOMFORDE,

BROWN & KNIGHT, Knoxville, Tennessee, for Appellant. Dean B. Farmer, Keith L. Edmiston, HODGES, DOUGHTY & CARSON, Knoxville, Tennessee, for Appellees.

––––––––––––––––––

**OPINION**

––––––––––––––––––

CLAY, Circuit Judge.  Plaintiff Sherry Jones appeals from the district court's order granting summary judgment to Defendants Union County, Tennessee ("Union County") and Union County Sheriff's Department ("the Sheriff's Department") pursuant to Fed. R. Civ. P. 56(c).  In granting summary judgment, the district court found that there was no genuine issue of material fact suggesting that Plaintiff's constitutional rights under 42 U.S.C. § 1983 were violated when Plaintiff was shot by her ex-husband allegedly as a result of the Sheriff's Department's failure to serve an *ex parte* order of protection upon him.  For the reasons set forth below, we **AFFIRM** the district court's judgment.

**BACKGROUND**

**A.  Procedural History**

Plaintiff filed a complaint against Defendants Union County and the Sheriff's Department on October 5, 1999, claiming that pursuant to 42 U.S.C. § 1983, Defendants violated her federal constitutional rights by having a policy and/or custom of providing less protection to victims of domestic violence than to victims of other crimes, and that gender discrimination was a motivating factor in the Sheriff's Department's failure to serve an *ex parte* order of protection on her ex-husband, Meb David Jones ("Jones").  Defendants filed their answer on December 7, 1999, denying most of the substantive allegations in the complaint and stating affirmative defenses that Plaintiff had failed to state a claim for violation of any constitutional rights for which Defendants were liable, and that Defendants had not proximately caused the injuries in question.  On August 9, 2000, Plaintiff moved

to amend her complaint to allege that Defendants violated her First and Fourteenth Amendment rights by failing to promulgate any policy or procedure to insure the service of *ex parte* orders of protection, by failing to train their deputies properly in the service of *ex parte* orders of protection, and by failing to protect Plaintiff from her ex-husband after affirmatively undertaking a duty to do so following the issuance of the *ex parte* order of protection.

Defendants moved for summary judgment under Fed. R. Civ. P. 56(c) on September 13, 2000, arguing that the Sheriff's Department was not an entity capable of being sued, that Plaintiff had failed to state a claim under 42 U.S.C. § 1983 because the Constitution does not protect citizens from private violence, and that there was no genuine issue of material fact regarding whether Union County acted with deliberate indifference or that it had a policy that proximately caused her damages. After the district court granted Plaintiff's motion to amend her complaint, Plaintiff filed her response to Defendants' motion for summary judgment on October 17, 2000, claiming that her § 1983 claim was viable because she had a special relationship with the Sheriff's Department as a result of obtaining a domestic order of protection. Plaintiff also claimed that the failure of the Sheriff's Department to serve the *ex parte* order of protection constituted deliberate indifference with respect to her federally protected rights and proximately caused her damages. However, in her response, Plaintiff conceded that the Sheriff's Department could not be sued. Defendants filed their answer to Plaintiff's amended complaint on October 26, 2000, and submitted a reply brief in support of their motion for summary judgment on October 30, 2000.

The district court granted Defendants' motion for summary judgment on December 27, 2000, ruling that Plaintiff's 42 U.S.C. § 1983 claim against the Sheriff's Department was dismissed because under *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994), a county sheriff's department could not be sued. The district court also held that under *DeShaney v. Winnebago County Dep't. of Social Services*, 489 U.S. 189

(1989), Plaintiff had failed to present evidence upon which a reasonable jury could find that: (1) one or more of her constitutional rights were violated, (2) the violations were the result of a custom or policy of Union County or deliberate indifference to her rights, and (3) the violations proximately caused her injuries. Plaintiff filed this timely appeal.

## B.   Substantive History

Plaintiff, a lifelong resident of Union County, married her ex-husband, whom she had known since 1969, on February 1, 1973. Plaintiff and her ex-husband began to have marital problems after Plaintiff had an extra-marital affair in 1994. Accusing her of continuing to see the man with whom she had the affair, Jones began to assault Plaintiff in the summer of 1996. Eventually, Plaintiff filed for divorce in January of 1997, obtaining an order of protection on January 22, 1997 because of Jones' alleged physical and mental abuse. According to Plaintiff, between the time the divorce complaint was filed and the date the divorce decree was entered on May 28, 1997, Jones continually violated the order of protection, making unwanted visits to her residence to see their two then-teenage children. However, Plaintiff acknowledged that Jones did not threaten her when he came by the house and that she did not call the Sheriff's Department or her attorney about his violations of the protection order during this time period. After the divorce, Jones was living on a houseboat, with the address of 33 Bridge Marina, Beach Island Road, Union County, Tennessee.

Subsequent to the issuance of the divorce decree, Plaintiff sought another order of protection in June or July of 1997 after Jones allegedly beat her very badly. At about this time, Plaintiff also alleged that Jones illegally tapped her home telephone and recorded her telephone conversations, resulting in his arrest pursuant to a warrant on July 3, 1997. Another order of protection was entered on July 11, 1997. Notwithstanding this protection order, Plaintiff testified in her deposition that Jones forced her from her home at gunpoint and assaulted her on July 22, 1997. As a result, a criminal

protection did not create or increase the danger posed to Plaintiff by her ex-husband, or place her specifically at risk. *Id.* Accordingly, Plaintiff has failed to show that she was denied due process of law by the Sheriff's Department's failure to serve the *ex parte* order of protection on her ex-husband.

Because *DeShaney* controls this case, it is unnecessary to reach Plaintiff's arguments about whether Union County exhibited deliberate indifference to the risk that Plaintiff would be harmed if the *ex parte* order of protection were not served before the rescheduled date of the hearing or whether its failure to serve the *ex parte* order caused her injuries. In any case, it is a matter of speculation as to whether timely service of the *ex parte* order of protection would have deterred Plaintiff's ex-husband, inasmuch as he was not deterred by the prospect of being charged with committing murder or attempted murder. As *DeShaney* clearly held, the state, as a general rule, cannot be held liable under the Due Process Clause for private acts of violence. 489 U.S. at 196-97. Thus, echoing the sentiment expressed by the Supreme Court in *DeShaney*, 489 U.S. at 202-03, while we are moved by the natural desire not to leave Plaintiff without a legal remedy for her injuries, we regrettably conclude that the Constitution cannot provide her with any relief.

## CONCLUSION

Accordingly, the district court did not err in granting summary judgment to Defendants pursuant to Fed. R. Civ. P. 56(c) because there was no genuine issue of material fact that Plaintiff's constitutional rights under 42 U.S.C. § 1983 were violated. For the foregoing reasons, we therefore **AFFIRM** the district court's order.

obtaining "protection from abuse" orders against him, because no duty existed on the part of the municipal defendants to protect her); *Dudosh v. City of Allentown*, 665 F. Supp. 381, 387-91 (E.D. Pa. 1987) (granting the defendant municipality's motion for summary judgment on the plaintiff's due process claim in a case decided before *DeShaney*, rejecting the plaintiff's claim that a special relationship existed when the police failed to protect her from her former companion after she had obtained a protection order when he attempted to assault her on previous occasions).

Plaintiff also argues the "state created danger exception," contending that Union County created or enhanced the danger to her by failing to serve the *ex parte* order of protection in a timely manner. In *Sargi,* this Court stated: "Liability under the state-created danger theory must be 'predicated upon the states' affirmative acts which work to plaintiffs' detriments in terms of exposure to danger.'" 70 F.3d at 913 (quoting *D.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1374 (3d Cir. 1992)). This Court in *Kallstrom* also required the plaintiff to prove that she faced a special danger from the affirmative actions of the state:

> However, because many state activities have the potential to increase an individual's risk of harm, we require plaintiffs alleging a constitutional tort under § 1983 to show "special danger" in the absence of a special relationship between the state and either the victim or the private tortfeasor. The victim faces "special danger" where the state's actions place the victim specifically at risk, as distinguished from a risk that affects the public at large.

136 F.3d at 1066.

In this case, Plaintiff offers no factual support for her claim that Union County created or enhanced the danger to her by failing to serve the *ex parte* order of protection in a timely manner. While the Sheriff's Department was well aware of the seriousness of the domestic problems involving Plaintiff and her ex-husband, its failure to serve the *ex parte* order of

arrest warrant was served on Jones on July 24, 1997, requiring him to post bond in the amount of $140,000. However, on January 23, 1998, Plaintiff voluntarily dismissed the order of protection entered on July 11, 1997. According to Plaintiff, she dismissed the July 11, 1997 protection order because Jones promised not to hurt her again and because she felt that his assistance was needed to help their son with his drug problem. There were apparently no problems between Plaintiff and Jones during the period from July of 1997 through the spring of 1998.

However, during the summer of 1998, Jones was involved in various altercations with several of Plaintiff's male friends who visited her house, but with whom she was not romantically involved. Specifically, there was a confrontation between Jones and Johnny Raley at Plaintiff's home in her presence on September 2, 1998 when Jones pushed Raley and told him to leave "his house." Although Jones did not have a key to Plaintiff's house, he had access to the garage where he stored numerous items of personal property, including his hunting rifles. According to Plaintiff, she was not threatened in this incident and did not worry about her safety at that time. In the summer of 1998, Plaintiff called the Sheriff's Department for assistance in removing Jones from her property in another incident when he would not leave. Although Plaintiff considered getting another protection order during the summer, she decided against it because she was concerned about its effect on her children. Thereafter, on September 18, 1998, Jones was arrested by the Sheriff's Department for assaulting Raley and David Brunner, another friend of Plaintiff.

In the meantime, Plaintiff began dating Greg Leach in August of 1998. After Jones tried to run Plaintiff off the road while she was traveling home from a softball game with Leach on September 28, 1998, Plaintiff sought and obtained an *ex parte* order of protection on September 29, 1998. An incident report of this altercation was filed with the Sheriff's Department.

Officer Dewayne Lawson, the domestic relations officer in the Sheriff's Department, gave deposition testimony that he attempted to serve Jones with the September 29, 1998 order of protection at least three times, and that another officer also attempted to serve him, within ten days of the order, at his address at 33 Bridge Marina, Beach Island Road, Union County, Tennessee. Officer Lawson did not have information, until after October 13, 1998, that Jones was not residing at that location, but was possibly living in Jefferson City, Tennessee. However, Officer Lawson acknowledged that he did not "go outside the county" to serve protection orders; nor did he contact the sheriffs' offices in the adjoining counties about Jones. Officer Lawson also did not attempt to serve the order at Jones' place of employment at the K-25 facility in Oak Ridge, Anderson County, Tennessee, even though he acknowledged that the Sheriff's Department knew where Jones worked. Officer Lawson also admitted that he did not call Plaintiff before she was shot to tell her that he was unable to serve the *ex parte* order of protection on her ex-husband.

Although Jones was not served with the *ex parte* protection order, Plaintiff testified in her deposition that she informed her ex-husband about the order in a telephone conversation about two or three days after she obtained the order. When Jones replied that he had not received the order, Plaintiff told him that she had been told that it had been served on him. Plaintiff acknowledged that she did not call the Sheriff's Department to determine whether the *ex parte* protection order had been served on Jones. Although the hearing on the order of protection was originally scheduled for October 9, 1998, both Plaintiff and Jones were advised by letter from the clerk of the Union County General Sessions Court that the hearing was reset for October 23, 1998.

On October 13, 1998, at about 3:10 a.m., Jones, carrying a pistol and shotgun, broke into Plaintiff's house and shot Plaintiff in the chest while she was in bed with Greg Leach, awakening Plaintiff's two children who were asleep in the house. After scuffling with Leach, Jones shot Plaintiff several

failing to timely process and serve an arrest warrant. In that case, the subject of the arrest warrant murdered the plaintiffs' decedent ten days after the warrant was issued. In finding that the defendants were immune from liability under the public duty doctrine under Tennessee law, the Tennessee Court of Appeals held that a sheriff's duty to execute arrest warrants was a public duty not owed to any particular person, and that the plaintiffs failed to establish an exception to the public duty doctrine on the basis of a special relationship. *Id*. at 581. Because Plaintiff complains only that the Sheriff's Department failed to serve the *ex parte* order of protection in a timely manner, we therefore conclude that no special relationship was created under Tennessee law.

At any rate, whatever duty Union County owed to Plaintiff as a matter of Tennessee tort law does not give rise to a constitutional duty in this case. *See DeShaney,* 489 U.S. at 202 ("But the claim here is based on the Due Process Clause of the Fourteenth Amendment, which, as we have said many times, does not transform every tort committed by a state actor into a constitutional violation."); *see also Dawson v. Milwaukee Hous. Auth.*, 930 F.2d 1283, 1286 (7th Cir. 1991) ("Federal courts do not enforce state law in the name of the Constitution.") (citing *DeShaney*, 489 U.S. at 202). Because the "special relationship" exception in the due process context has been limited to situations in which the state affirmatively acts to restrain an individual to act for himself or herself, we conclude that Plaintiff cannot show the "special relationship" exception in this case. *See Dawson,* 930 F.2d at 1283 (refusing to find a due process violation under *DeShaney* when the housing authority failed to remove a resident who threatened the plaintiff, despite a court order of protection, rejecting the plaintiff's argument that he was in a quasi-custodial relationship with the housing authority); *Hynson v. City of Chester*, 731 F. Supp. 1236, 1239-40 (E.D. Pa. 1990) (applying *DeShaney* on remand from the Third Circuit, finding that the plaintiffs' decedent, who was murdered by her boyfriend one day after the police were called to her home to investigate an incident involving the boyfriend, could not recover under a § 1983 due process claim, despite previously

Process Clause of the Fourteenth Amendment. *See Harrill v. Blount County, Tenn.*, 55 F.3d 1123, 1125 (6th Cir. 1995) ("The violation of a right created and recognized only under state law is not actionable under § 1983.").

In seeking to establish her claim that a "special relationship" existed in this case, Plaintiff also relies upon the decision of the Tennessee Supreme Court in *Matthews v. Pickett County,* 996 S.W.2d 162, 163 (Tenn. 1999), which held that the officers had a special duty under Tennessee law to the plaintiff to arrest her husband when they confronted him at her residence in violation of the order of protection that the plaintiff obtained after her estranged husband had "assaulted, beaten, and sexually violated" her. *Id.* In *Matthews*, the officers were aware that the plaintiff's estranged husband, on the eve of their divorce hearing, had made specific death threats against her and had attempted to break into her residence. Moreover, at the plaintiff's request, police officers took her to the courthouse where she could obtain a warrant for his arrest. Upon returning to the plaintiff's house, the police officers observed that her car had been riddled with bullets. After driving the plaintiff to a location outside the county, the police posted officers at her residence. Although officers saw the plaintiff's husband arrive on her property with a large container and leave without it, they did not arrest him or even question him, even though a warrantless arrest was authorized by statute. After the officers left, the plaintiff's residence burned to the ground. *Id*.

As Union County points out, the instant case is clearly distinguishable from *Matthews.* In *Matthews,* it was not the mere existence of the order of protection that created the special relationship. Rather, a special relationship was created in *Matthews* because the defendant's police officers offered to protect the plaintiff in response to her request for assistance after she was threatened by her husband. The present case, as Union County argues, is more analogous to *Hurd v. Woolfork*, 959 S.W.2d 578 (Tenn. Ct. App. 1997), where the plaintiffs sued the sheriff and county defendants for

more times before leaving the premises and later committing suicide.

## DISCUSSION

### A. Standard of Review

This Court reviews *de novo* a district court's order granting or denying a motion for summary judgment. *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. To prevail on a motion for summary judgment, the moving party must demonstrate to the court that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Thus, if the party moving for summary judgment can show that there is an absence of "significant and probative" evidence in the record to support the plaintiff's case, then the moving party is entitled to summary judgment as a matter of law. *Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.")).

### B. Analysis

The district court did not err in granting summary judgment to Defendants pursuant to Fed. R. Civ. P. 56(c) because there was no genuine issue of material fact that Plaintiff's constitutional rights were violated under 42 U.S.C. § 1983. To establish a § 1983 claim, Plaintiff has to show that she was deprived of a federal right by a person acting under color of state or territorial law. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (citing *Monroe v. Pape*, 365 U.S. 167, 171 (1961)). Because Plaintiff does not appeal from the district

court's dismissal of Defendant Union County Sheriff's Department, the threshold question is whether Defendant Union County, Tennessee, through the Sheriff's Department, deprived Plaintiff of a right "secured by the Constitution and laws." *See Kallstrom v. City of Columbus*, 136 F.3d 1055, 1060 (6th Cir. 1998) (citing *Baker v. McCollan*, 443 U.S. 137, 140 (1979)).

In her complaint, Plaintiff claims that Union County violated her constitutional rights to due process and equal protection by allegedly failing to provide her with adequate protection from her ex-husband when it failed to serve the September 29, 1998 order of protection in a timely fashion. In her second amended complaint, Plaintiff alleges in pertinent part:

10. Plaintiff avers that the Defendant violated Plaintiffs [sic] First and Fourteenth Amendment rights by failing to promulgate any policy to ensure the service of Ex Parte Order of Protections and thereby violating Plaintiff's federal constitutional rights of access to judicial process. The failure of the Defendant to promulgate any such policy constitutes deliberate indifference and was the moving force behind the violation of Plaintiff's federal constitutional rights.

11. Plaintiff avers that the Defendant had a policy of [sic] custom of failing to train its deputies in the service of Ex Parte Orders of Protection, that the failure to train constituted deliberate indifference, and a proximate cause of violation of Plaintiff's federal constitutional rights.

12. The Plaintiff avers that the Defendant affirmatively undertook a duty to protect Plaintiff from her ex-husband by the issuing of the Ex Parte Order of Protection, Plaintiff relied on Defendant to serve said Order, and Defendant acted with deliberate indifference in failing to serve the Ex Parte Order of Protection and accordingly violated Plaintiff's Fourteenth Amendment rights.

Amendment.'") (quoting from *Daniels v. Williams*, 474 U.S. 327, 335 (1986)).

That no special relationship existed between Union County and Plaintiff based upon the Tennessee domestic violence protection statute finds support in *Brown*, 922 F.2d at 1097, where the Third Circuit rejected a similar argument. In *Brown*, the plaintiff argued that there was an exception to the general rule stated in *DeShaney* based upon the claim that the New Jersey Domestic Violence Act, N. J. Stat. Ann. § 2C:25-7 (1982), created a special relationship between the plaintiff's decedent and the police, obligating the police to provide the plaintiff's decedent with access to the courts. Under that statute, the police are required to inform a victim of domestic violence about her right to obtain a restraining order in civil court against her attacker. In *Brown,* the plaintiff's decedent was found frozen to death in the trunk of her car in a motel parking lot after being abducted by her boyfriend. On a previous occasion, the boyfriend held her hostage for three days, during which he repeatedly threatened and sexually assaulted her. Although the decedent's family reported this episode to the police, no criminal charges were filed against the boyfriend. In granting summary judgment on the plaintiff's claim that the police violated the victim's due process right to police protection, the Third Circuit found that the plaintiff did not set forth a cognizable claim under § 1983 because the Domestic Violence Act did not create a special relationship between the victim and the police. *Brown*, 922 F.2d at 1113-14.

In this connection, we note that Plaintiff's reliance upon *Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972) for the proposition that a violation of a state statutory provision may give rise to a violation of a substantive due process right under the Fifth or Fourteenth Amendment is simply misplaced. *Roth* is unavailing because that case only involved the entitlement to procedural due process arising from a property interest created by state law. In any event, this Court has held that a violation of a state statute does not create a liberty interest or property right under the Due

the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic needs." 489 U.S. at 200. The Court in *DeShaney,* however, left open the possibility that the state may be liable for constitutionally protected rights, even in the absence of a special relationship with an individual, when the state, through its affirmative conduct, creates or enhances a danger for the individual. *Id*. at 201.

Thus, two exceptions have been recognized to the general rule that the Due Process Clause does not create an affirmative duty to protect. The first, or "special relationship" exception, occurs when the state restrains an individual so as to expose the individual to harm. *Sargi v. Kent City Bd. of Educ.*, 70 F.3d 907, 910-11 (6th Cir. 1995) ("A special relationship can only arise when the *state* restrains an individual.") (emphasis in original). The second, or "state created danger" exception, occurs when the state through some affirmative conduct places the individual in a position of danger. *See Kallstrom,* 136 F.3d at 1066.

Seeking to circumvent the general rule stated in *DeShaney,* Plaintiff claims that she was in a "special relationship" with Defendants as a result of obtaining a domestic order of protection. In support, Plaintiff first argues that a special relationship was created between Union County and her based upon the intent of the Tennessee Legislature in enacting the domestic violence protection statute, Tenn. Code Ann. § 36-3-618, and requiring a sheriff to serve civil process, as set forth in Tenn. Code Ann. § 38-8-201(a). However, the Tennessee Legislature's imposition of affirmative duties upon state officials to serve *ex parte* orders of protection timely does not give rise to a due process claim cognizable under § 1983 based upon a special relationship between Union County and Plaintiff. *See DeShaney*, 489 U.S. at 202 ("A State may, through its courts and legislatures, impose such affirmative duties of care and protection upon its agents as it wishes. But not 'all common-law duties owed by government actors were . . . constitutionalized by the Fourteenth

13. The Plaintiff avers that Defendant had a federal constitutional and state law duty to serve her ex-husband with the Ex Parte Order of Protection and accordingly, a special relationship existed between Plaintiff and Defendant. The Plaintiff avers that Defendant's deliberate indifference in failing to serve the Ex Parte Order of Protection constitutes a violation of her Fourteenth Amendment rights. Further, and in the alternative, if no special relationship existed, Defendant enhanced the danger to Plaintiff by acting with deliberate indifference in failing to inform Plaintiff that the Order of Protection had not been served. Accordingly, Plaintiff's Fourteenth Amendment rights were violated for this additional reason.

14. As a direct and proximate result of Plaintiff's federal constitutional right, Plaintiff sustained serious and permanent injuries to various parts of her body. Plaintiff also incurred substantial medical expenses for treatment of her injuries, lost wages, lost earning capacity and loss for enjoyment of life.

(J.A. at 17-18.)

As argued in her brief, Plaintiff's complaint sets forth a § 1983 claim based upon the alleged violations of her constitutional rights to access to the courts, equal protection and due process. These alleged constitutional violations will be addressed seriatim.

**Plaintiff was not denied her constitutional right of access to the courts.**

We will first address Plaintiff's claim that under *Swekel v. City of River Rouge*, 119 F.3d 1259 (6th Cir. 1997), the failure of the Sheriff's Department to serve the *ex parte* order of protection within ten days of its issuance violated her right of meaningful access to the courts under the Due Process Clause of the Fourteenth Amendment.

Under Tennessee law, Tenn. Code Ann. § 36-3-605, a hearing on the domestic protection order must be held within fifteen days of service of the order, and the party served must be given at least five days notice of the hearing.[1] Once an *ex parte* order of protection is issued in Union County, the clerk's office delivers the order to the Sheriff's Department, where it is placed in a file designated for protection orders. In his deposition, Sheriff Earl Loy, Jr. testified that "[m]y job is to serve [protection orders] * * * as quickly as possible,"

---

[1]Tenn. Code Ann. § 36-3-605 provides:

a) Upon the filing of a petition under this part, the courts may immediately, for good cause shown, issue an ex parte order of protection. An immediate and present danger of domestic abuse to the petitioner shall constitute good cause for purposes of this section.

(b) Within fifteen (15) days of service of such order on the respondent under this part, a hearing shall be held, at which time the court shall either dissolve any ex parte order which has been issued, or shall, if the petitioner has proved the allegation of domestic abuse by a preponderance of the evidence, extend the order of protection for a definite period of time, not to exceed one (1) year unless a further hearing on the continuation of such order is requested by the respondent or the complainant in which case, on proper showing of cause, such order may be continued for a further definite period of one (1) year after which time a further hearing must be held for any subsequent one-year period. Any ex parte order of protection shall be in effect until the time of the hearing. If no ex parte order of protection has been issued as of the time of the hearing, and the petitioner has proven the allegation of domestic abuse by a preponderance of the evidence, the court may, at that time, issue an order of protection for a definite period of time, not to exceed one (1) year.

(c) The court shall cause a copy of the petition and notice of the date set for the hearing on such petition, as well as a copy of any ex parte order of protection, to be served upon the respondent at least five (5) days prior to such hearing. Such notice shall advise the respondent that the respondent may be represented by counsel.

Tenn. Code Ann. § 36-3-605.

---

**Plaintiff was not denied substantive due process under *DeShaney*.**

Plaintiff was also not denied her right to substantive due process when Union County failed to serve the *ex parte* protection order on her ex-husband in a timely fashion. In *DeShaney*, 489 U.S. at 189, the United States Supreme Court addressed a claim brought by a mother and her child under 42 U.S.C. § 1983 against the county department of social services alleging that the child had been denied due process of law when the department failed to intervene and protect him from the injuries he suffered at the hands of his violent father. In *DeShaney*, the Court reaffirmed that "our cases have recognized that the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." 489 U.S. at 196. The Court added:

If the Due Process Clause does not require the State to provide its citizens with particular protective services, it follows that the State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them. As a general matter, then, we conclude that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.

*Id.* at 196-97.

Even though the Due Process Clause does not generally impose affirmative duties upon the state to protect the interests of individuals, an affirmative duty of care and protection has been recognized in certain situations. *Id.* at 198; s*ee also Youngberg v. Romeo*, 457 U.S. 307, 319 (1982) (holding that the state must provide involuntarily committed mental patients with services necessary to ensure their "reasonable safety"); *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (requiring the state to provide adequate medical care to incarcerated prisoners). In *DeShaney*, the Supreme Court thus held that there was an affirmative duty to protect "when

was injured by the policy or custom.") (footnote omitted); *see also Watson v. City of Kansas City*, 857 F.2d 690, 694 (10th Cir. 1988) (holding that "to survive summary judgment, the plaintiff must go beyond her pleadings and show that she has evidence of specific facts that demonstrate that it is the policy or custom of the defendants to provide less police protection to victims of domestic assault than to other assault victims. She must also provide evidence that discrimination was a motivating factor for the defendants and that she was injured by operation of the policy or custom.").

In this case, Union County notes that Plaintiff does not indicate whether her equal protection claim is based upon her status as a victim of domestic violence generally or her status as a woman subject to domestic violence. Whatever her status, Plaintiff has failed to identify any policy of Union County that purposefully and intentionally discriminates against victims of domestic violence specifically or women generally. First, there is no indication in the record that victims of domestic violence in Union County are provided with less protection than those of other crimes. According to Sheriff Loy, Union County's written policy on domestic violence requires a domestic violence call to be treated like "any other life threatening call." On this policy, the preferred response of the officers is to arrest the primary aggressor. Further, there is no evidence that Union County discriminated against women purposefully and intentionally with respect to the service of *ex parte* protection orders. *See Watson*, 857 F.2d at 696-97 (affirming the district court's grant of summary judgment for the defendants on the plaintiff's equal protection claim because the plaintiff failed to demonstrate that the policy of the police department discriminating against victims of domestic violence adversely affects women) (citing *Personnel Adm'r v. Feeney*, 442 U.S. 256, 274 (1979)). Specifically, there is nothing to indicate that Union County's policy toward victims of domestic violence adversely affects women or was based upon any animus to women. Thus, there is no genuine issue of material fact that Plaintiff was denied her constitutional right of equal protection.

and that "[i]t's [a] priority for every officer to seek that file out and take those out with them and attempt to serve them * * * [on a ] [f]irst come first served [basis.]" (J.A. at 232-33, 236-37.) According to Sheriff Loy, the orders that are not served are returned to the file where they stay until they are served, "[o]r until a deadline comes on them and they're returned back up to the clerk's office to be reissued." (J.A. at 238.)

Although Plaintiff argues that her claim arises under the Due Process Clause of the Fourteenth Amendment, Union County argues that Plaintiff's claim in this case is more properly analyzed under the Petition Clause of the First Amendment. *See California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) (analyzing the issue of access to courts under the Petition Clause); *Swekel*, 119 F.3d at 1261-62; *Valot v. Southeast Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1226 (6th Cir. 1997). Whatever analysis is adopted, Plaintiff has failed to present a genuine issue of material fact that she was denied her constitutional right of access to the courts.

In *Swekel,* this Court, analyzing the access to the courts claim under the Due Process Clause, stated:

A court must analyze several factors before deciding whether a person's fundamental right of access to the courts has been violated. First, a court must ascertain whether the abuse occurred pre- or post-filing. *When the abuse transpires post-filing, the aggrieved party is already in court and that court usually can address the abuse, and thus, an access to courts claim typically will not be viable*. If the abuse occurs pre-filing, then the plaintiff must establish that such abuse denied her "effective" and "meaningful" access to the courts. She can do this only by showing that the defendants' actions foreclosed her from filing suit in state court or rendered ineffective any state court remedy she previously may have had.

*Id*. at 1263-64 (emphasis added).  In *Swekel*, this Court affirmed the dismissal of the plaintiff's suit brought under 42 U.S.C. § 1983, finding that the plaintiff presented no evidence that she went to the state courthouse and was physically prevented or mechanically barred from filing her lawsuit.

In this case, Plaintiff's claim purportedly involves an alleged post-filing abuse of her right to access to the courts, since Plaintiff had already obtained the *ex parte* order of protection, and was awaiting an October 23, 1998 hearing on the order, which was originally scheduled for October 9, 1998, when her ex-husband shot her.  Nevertheless, Plaintiff has not provided any factual basis showing how the Sheriff's Department's failure to serve the *ex parte* order of protection thereby denied her "effective" and "meaningful" access to the courts.  Accordingly, Plaintiff has failed to demonstrate a genuine issue of material fact as to her claim that she was denied her constitutional right of access to judicial process under the Due Process Clause of the Fourteenth Amendment. *Id*. at 1263; s*ee also Brown v. Grabowski*, 922 F.2d 1097, 1113 (3d Cir. 1990) (rejecting claim that victim of domestic violence was denied her constitutional right to receive assistance in gaining access to the courts accorded to her by New Jersey's Domestic Violence Act).

Plaintiff also cannot make out a claim that she was denied access to the courts under the Petition Clause of the First Amendment.  As Union County correctly states, actions under the Petition Clause are limited to matters of public concern. *Valot*, 107 F.3d at 1226.  This Court in *Valot* also noted that "a particular expression addresses a matter of public concern where it can 'be fairly considered as relating to any matter of political, social, or other concern to the community.'"  *Id.* (quoting *Connick v. Myers*, 461 U.S. 138, 147-48 (1983)). Although there is no question that combating domestic violence is a matter of public concern, Plaintiff's specific request for an order of protection against her ex-husband in this case was "far more a matter of private interest than public concern."  *Valot,* 107 F.3d at 1226 (holding that the availability of unemployment compensation "is far more a

matter of private interest than public concern").  However, even assuming *arguendo* that Plaintiff's action for court-ordered protection were a matter of public concern under the Petition Clause of the First Amendment, there is no genuine issue of material fact about whether she was denied access to the courts.  As Union County points out, a hearing on the order rescheduled for October 23, 1998 would have entitled Plaintiff to make the order of protection permanent and to have her ex-husband arrested for violating the conditions of the protection order.  Thus, there is no  genuine issue of material fact that Plaintiff was denied her constitutional right of access to courts under the Petition Clause of the First Amendment.

**Plaintiff was also not denied equal protection by Union County.**

Plaintiff also claims that she was denied equal protection under the Fourteenth Amendment when Union County failed to serve the *ex parte* order of protection in a timely manner, thus allegedly resulting in the injuries that she suffered when her ex-husband shot her.  To establish an equal protection claim under § 1983, Plaintiff must show that she is a member of a protected class and that she was intentionally and purposefully discriminated against because of her membership in that protected class.  *See Boger v. Wayne County*, 950 F.2d 316, 325 (6th Cir. 1991).  To demonstrate that the discrimination was purposeful and intentional, Plaintiff must show that it is the policy or custom of Union County to provide less protection to victims of domestic violence than those of other crimes, and that gender discrimination was the motivation for this disparate treatment. *See Hynson v. City of Chester*, 864 F.2d 1026, 1031 (3d Cir. 1988) (finding that to survive a motion for summary judgment raising a claim of gender-based discrimination, "a plaintiff must proffer sufficient evidence that would allow a reasonable jury to infer that it is the policy or custom of the police to provide less protection to victims of domestic violence than to other victims of violence, that discrimination against women was a motivating factor, and that the plaintiff