Tre'Bion William McCorvey LINDSAY, Plaintiff–Appellant,

v.

Charles BOGLE, David Joyce, and Mike Wilhoit, Defendants– Appellees.

No. 02–6201.

United States Court of Appeals, Sixth Circuit.

Feb. 3, 2004.

Trebion William McCorvey, Lindsay, pro se, Nashville, TN, for Plaintiff–Appellant.

Molly R. Cripps, Farrar & Bates, Nashville, TN, for Defendant–Appellee.

Before MERRITT and SUTTON, Circuit Judges; and FEIKENS, District Judge.[*]

SUTTON, Circuit Judge.

In this case, plaintiff Tre'Bion William McCorvey Lindsay complains that officers of the Springfield Police Department violated his constitutional rights by using excessive force against him and by withholding from him information about the department's internal investigation of the incidents surrounding his arrest. Because Lindsay's own version of the events does not establish a constitutional violation, we affirm the district court's grant of summary judgment to the defendant police officers and police chief.

## I.

This case arises out of the police response to a 911 call placed by Lindsay's wife on the morning of May 30, 1999. According to Lindsay, his brother-in-law, Darryl Payne, arrived at the Lindsay home seeking a ride to the store. The Lindsays turned him away, allegedly because of his propensity for shoplifting and because they were still asleep. Payne returned a couple of hours later intoxicated and again asked for a ride. Lindsay again refused, and Payne attempted to advance into the Lindsays' apartment. Payne allegedly "physically grabbed [Lindsay] [and] was attacking trying to pull him out of the apartment doorway." Pl. Compl. at 2. While Lindsay struggled with Payne and tried to expel him from the apartment, Lindsay's wife called the police.

Lindsay apparently does not deny that when the police officers (Officer Charles Bogle and Sergeant David Joyce) arrived, he was on top of Payne and had him pinned to the ground, that Payne had lacerations on his face and that Payne's blood was splattered on the floor nearby. After speaking with the men and with Lindsay's wife, the officers arrested Payne for public intoxication and escorted him out to the patrol car.

The details of what happened next are disputed by the parties, but it is nonetheless clear that the officers were attempting to arrest Lindsay as well. According to Lindsay, police told him he would have to "go down to the jail" for assaulting Payne. Lindsay protested, insisting that he "hadn't done anything wrong" and had merely been "defending [his] family." Pl. Compl. at 3. Lindsay claims that eventually he acceded to their requests that he leave with them, "put his hands up in the air," and started walking toward the door of the apartment. *Id.* At this point, he alleges, Bogle jumped in front of him, spraying him with a chemical agent ("Freeze Plus P") and pushing him backward. Once Lindsay was on the floor, Bogle "jumped on top of his back" and handcuffed him. *Id.* at 7.

Payne and Lindsay were both transported to the station for booking. Lindsay claims, and the police admit, that while detained in the booking area, he was assaulted by a blow to the left side of his face. Lindsay also claims that although he was still blinded by the chemical spray at the time, he "feels" he was assaulted by police at the station. According to the

[*] The Honorable John Feikens, United States District Judge for the Eastern District of Michigan, sitting by designation.

defendants and according to Payne's own admission, it was Payne and not the officers who kicked Lindsay in the face. Joyce Aff. at 3; Bogle Aff. at 3; Payne Dep. at 17. Due to the injury to Lindsay's face, an officer transported him to the North Crest Medical Center for treatment. Although their characterizations of the events at the hospital differ, it is clear from both Lindsay's and the defendants' accounts that Lindsay effectively refused care by not answering the questions of medical personnel and by telling them that "they had no right to put their hands upon him." Pl. Compl. at 11.

As a result of the incident, Lindsay filed a citizen's complaint against Sergeant Joyce and Officer Bogle with the Springfield Police Department. Police Chief Mike Wilhoit asked Detective Madison Burnett to conduct an internal investigation of the complaint. At some point Lindsay met with Wilhoit and requested the investigation file, but Wilhoit refused. Lindsay claims that Wilhoit told him, "I heard you say you were going to sue and I will not give you any written results of the investigation and this will be a matter for the courts to decide." Pl. Compl. at 5.

Lindsay brought this pro se suit under 42 U.S.C. § 1983 against Bogle, Joyce, Wilhoit, the State of Tennessee and Assistant District Attorney Dent Morris, alleging multiple violations of his constitutional rights. In particular, he claimed that the above incidents constituted violations of his rights to be free of unlawful arrest and excessive force, that he was discriminated against on the basis of his race, that police failed to protect him while in their custody and denied him proper medical treatment, and that he was denied due process by Wilhoit's refusal to provide him with information about the police department's internal investigation.

The district court dismissed as frivolous, and certified as non-appealable in forma pauperis, all of Lindsay's claims except those against Bogle and Joyce pertaining to excessive force and the due process claim against Wilhoit. These defendants filed a motion for summary judgment, claiming that Lindsay had not sued them in their individual capacities, and that Lindsay had failed to allege that their actions were taken in accordance with a custom or policy of the City of Springfield, as required for an official capacity suit to move forward. In the alternative, they argued that Lindsay's rights had not been violated as a matter of law. The magistrate recommended granting the defendants' motion on the grounds that Lindsay had not sued them in their individual capacities and had not pleaded a custom or policy. The district court adopted the magistrate's recommendation and Lindsay appealed.

## II.

We review de novo the district court's grant of summary judgment. *See Spadafore v. Gardner*, 330 F.3d 849, 851–52 (6th Cir.2003). Summary judgment is warranted when "no genuine issue as to any material fact" exists and "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In challenging a summary judgment motion, the nonmoving party "may not rest upon the mere allegations or denials or his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quotation and citation omitted).

## A.

As the district court noted, Lindsay's complaint does not specify the capacity in which he is suing the police officers.

Nonetheless, this failure is "not fatal if the course of proceedings otherwise indicates that the defendant[s] received sufficient notice" of his intent to sue them personally. *Moore v. City of Harriman,* 272 F.3d 769, 772 (6th Cir.2001). To determine whether the defendants had such notice, the "course of proceedings" must be examined in light of "the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint, particularly claims of qualified immunity." *Id.* at 772 n. 1.

Two of these factors counsel in Lindsay's favor: (1) he requested monetary relief, and (2) the defendants raised a qualified immunity defense in their answer "to the extent that the Plaintiff has alleged a cause of action against Defendants in their individual capacities." Defs. Answer at 7. Although a request for monetary damages alone may not suffice to establish the requisite notice, *Shepherd v. Wellman,* 313 F.3d 963, 969 (6th Cir.2002), the assertion of a qualified-immunity defense (even a *contingent* qualified-immunity defense) indicates that the defendants were aware they could be held personally liable. *See Biggs v. Meadows,* 66 F.3d 56, 61 (4th Cir.1995) (deciding that the "course of proceedings" indicated defendants would not be prejudiced by the court's treating the suit as one against them individually where plaintiff sued for damages and defendants raised a qualified immunity defense); *cf. Rodgers v. Banks,* 344 F.3d 587, 594 (6th Cir.2003) (noting that defendant had not moved for summary judgment on the issue of qualified immunity). To the extent doubt persists that this combination of factors warrants construing the complaint as one against the defendants individually, this doubt should be resolved in Lindsay's favor as a pro se plaintiff. *See Boswell v. Mayer,* 169 F.3d 384, 387 (6th Cir.1999) ("Pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings.").

**B.**

■ Nonetheless, Lindsay does not offer sufficient evidence of any constitutional violations to permit him to survive summary judgment. His excessive force claim appears to be based on (1) police conduct during his arrest (the chemical spray, the push, the handcuffing), and (2) the blow to his head during booking. We judge these allegations by a standard of objective reasonableness–namely, the standpoint of a reasonable officer faced with similar circumstances. *See Graham v. Connor,* 490 U.S. 386, 396–97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). This perspective "allow[s] for the fact that police officers are often forced to make split-second judgments ... about the amount of force that is necessary in a particular situation." *Id.* at 397, 109 S.Ct. 1865.

When Bogle and Joyce appeared on the scene, it is undisputed that Lindsay was on top of Payne, that Payne had lacerations on his face and that Payne's blood was on the floor. In view of these observations, the officers need not have taken Lindsay at his word that he had acted justifiably in self-defense, but rather had ample reason to arrest Lindsay for the assault. After the officers had arrested Payne for intoxication and escorted him outside, Lindsay protested Officer Bogle's statement that he too would be going to the station, and refused to comply. Given the severity of Lindsay's apparent crime, his less than cooperative stance toward the officers, and the fact that the officers were at a disadvantage in Lindsay's home, the relatively minor uses of force by Bogle–the mace, the push, and the handcuffing–were justified as a matter of law in securing Lindsay's arrest. *See Monday v. Oullette,* 118 F.3d 1099, 1104–05 (6th Cir.1997) (use of pepper spray against large, intoxicated man who refused to go with officers to a hospital

was reasonable); *see also Vinyard v. Wilson,* 311 F.3d 1340, 12348 (11th Cir.2002) ("Courts have consistently concluded that using pepper spray is reasonable ... where the plaintiff was either resisting arrest or refusing police requests, such as requests to enter a patrol car....").

Lindsay alleges that when Officer Bogle maced and pushed him, Bogle had not told him that he was under arrest or that he should submit to handcuffing. Further, he claims that he had given up protesting and was moving toward the door to go with the officers to the police station. Even if the scenario played out as innocently as Lindsay claims, Bogle's reaction was still objectively reasonable. First, by Lindsay's own admission, the officers had communicated that they would be taking Lindsay "down to the jail," which reasonably signaled to Lindsay that he was under arrest. Second, that Lindsay intended to allow the officers to transport him to the station is of no moment because he did not communicate this intent to the officers and merely began walking. The Constitution does not require Bogle to have waited until it became clear where Lindsay was going or what he was doing before intervening to bring the situation under control and take Lindsay into custody by means of minimal force.

■ As for the assault that occurred at the police station, it cannot be attributed to the officers. According to Bogle, Joyce and Payne himself, it was Payne who kicked Lindsay in the face, not the officers. Lindsay does not contradict this with his own allegations, much less with any other evidence. He merely claims that he "feels" that an officer assaulted him at the station; notably absent from his complaint, however, are any allegations that Bogle, Joyce or Wilhoit actually assaulted him.

To the extent Lindsay claims the defendants acted unconstitutionally by failing to protect him from Payne while he was being booked at the station, *see Gazette v. City of Pontiac,* 41 F.3d 1061, 1065 (6th Cir.1994) (recognizing duty to protect persons with whom the state has a "special relationship," including those in custody), this claim too falls short. Even assuming Lindsay was in state "custody" when he was in the booking area of the station (as opposed to being a prisoner in one of its cells), he has not alleged that the officers "observed or had reason to know" that Payne would kick him, or that the officers had any opportunity to prevent Payne's actions. *Cf. Turner v. Scott,* 119 F.3d 425, 429 (6th Cir.1997) (stating test for police liability for failure to protect an individual from excessive force by fellow officer).

### III.

■ Unfortunately this case comes to us without a clearly-defined theory of due-process liability against Chief Wilhoit. One possible reading of Lindsay's complaint is that Wilhoit committed a *Brady* violation by refusing to give him the internal investigation file. Yet even if the file had contained exculpatory information relating to the assault and resisting-arrest charges pending against Lindsay, the facts of this situation do not establish a *Brady* claim. For one, it was Wilhoit and not the prosecutor who refused to turn over the information, and the *Brady* obligation applies only to prosecutors. *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) (noting that satisfying *Brady* "is the responsibility of the prosecutor"). For another, Lindsay was ultimately acquitted, rendering any hypothetical violation harmless. *Strickler v. Greene,* 527 U.S. 263, 282, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) (noting that individual must show prejudice to establish a *Brady* violation).

■ Alternatively, Lindsay's complaint may be read as a claim that his *civil* suit would have been aided by the internal

investigation information, and that Wilhoit impeded his ability to succeed on this claim by withholding the file. While this interpretation of the claim is difficult to fit within the rubric of constitutional rights, it comes closest to a claim that Lindsay's right of access to the courts was violated by police concealment of information concerning wrongdoing by officers. *See Swekel v. City of River Rouge*, 119 F.3d 1259, 1262 (6th Cir.1997). However, the mere allegation that Wilhoit would not turn over the file–a file that Lindsay had no apparent statutory or constitutional right to receive–does not amount to actionable police concealment of official misconduct, particularly where Lindsay already had at his disposal the facts that formed the basis of this action, *see id.* at 1263.

## IV.

For the foregoing reasons, we affirm the district court's judgment.