Thomas Edward **CARMACK**, Plaintiff,

v.

Joseph **TROMBLEY** and the City of Roseville, a Michigan Municipal Corporation, Jointly and Severally, Defendants.

No. CIV. 04–70110.

United States District Court,
E.D. Michigan,
Southern Division.

March 31, 2005.

Gregory F. Lord, Gregory Fisher Lord Assoc., Sterling Heights, Jeffrey S. Sherbow, Sherbow & Mitchell, Pleasant Ridge, MI, for Plaintiff.

G. Gus Morris, Kupelian, Ormond, Southfield, MI, for Defendant.

## OPINION AND ORDER

FEIKENS, District Judge.

Plaintiff sued Defendants for a violation of his First and Fourteenth Amendment rights under 42 U.S.C. § 1983.[1] Plaintiff claims Defendants were unlawfully infringing his right to free speech by forcibly stopping him from speaking on a public street and by issuing him a disorderly conduct citation for that speech. Defendants move for summary judgment.

Defendant Trombley argues that he is not named in his individual capacity, and that he is entitled to qualified immunity. Both Defendants argue that Plaintiff failed to establish that a policy, procedure, or custom of the City of Roseville caused the alleged deprivation of his Constitutional rights. For the reasons below, I GRANT Defendants' Motion for Summary Judgment on the first count and DISMISS the remaining state claims.

## FACTUAL BACKGROUND

The parties agree on the following facts: Plaintiff and his son[2] went to Gabriel's Bar in Roseville on May 26, 2002, where Plaintiff's son became embroiled in a fight. (Pl.'s Dep. at 53, Defs.' Br. at 2.) The police were called, and arrived at the bar near midnight. (Pl.'s Dep. at 49–50, Defs.' Br. at 2.) Several officers arrested Plaintiff's son, and Plaintiff watched the arrest and vocalized his displeasure at the treatment of his son during the arrest. (Pl.'s Dep. at 73, Defs.' Br. at 2.) Defendant Trombley then grabbed Plaintiff by the arm and applied some force, causing Plaintiff to fall to the ground in the direction of the bar. (Pl.'s Br. at 1, Defs.' Br. at 3.) Plaintiff later received a disorderly conduct ticket through the mail, but on March 21, 2003, the jury on the matter hung and the charges were later dismissed. (Pl.'s Br. at 2, Defs.' Br. at 3.)

The parties differ on a number of facts. They disagree about the treatment of Plaintiff's son during arrest, but that dispute is not material to the question before me. They disagree about the degree of force used by Trombley when he grabbed Plaintiff, but again, it is not necessary to determine how hard Plaintiff was pushed in order to decide the federal claim. Finally, the parties disagree about the wording, length, and volume of Plaintiff's protests to police, and about whether Plaintiff was attempting to stir up the crowd. Such

---

**1.** Additionally, Plaintiff brought the state law claims of assault and battery and malicious prosecution against both Defendants.

**2.** Plaintiff stated in his deposition that he was accompanying his son to the bar to be a designated driver, because Plaintiff does not drink alcohol. He also stated that he and his son took separate cars to the bar from Plaintiff's home, and that Plaintiff's son might have had something to drink at Plaintiff's home before leaving for the bar. (Pl.'s Dep. at 49.)

facts are relevant here, so I will describe the position of the parties. A squad car at the scene videotaped the altercation between Plaintiff and Defendant Trombley, and the visual quality of the tape is good, although there is no audio component to the recording. (Defs.' Ex. A.)

Plaintiff says that he was watching his son's arrest, became upset at the force used, and then pointed to Trombley and said, "Sir, you have no right doing that, who in the hell do you think you are." (Pl.'s Dep. at 73.) He stated that he did not yell this statement, that he said nothing more to officers, and that no officer, including Trombley, ever gave him any instructions. (*Id.* at 74.)

Defendants claim that Trombley instructed the group of people outside the bar, including Plaintiff, to go back in the bar, because several members of the group were loud and disorderly. (Defs.' Br. at 2.) Defendants say that Plaintiff remained outside the bar, yelled at Trombley repeatedly, and "profanely challenged the officer's authority in front of an unruly crowd." (*Id.* at 2–3.)

Although there is no sound, the videotape supports Defendants' rendition of events. Plaintiff was clearly speaking to several members of the crowd, and gesturing toward the officers as he did so. Soon after, the majority of people standing outside the bar go back inside, but Plaintiff remains. He gestures and is clearly vocalizing something for a much longer time than it would take to say less than 20 words. Defendant Trombley then comes over and grabs Plaintiff's arm, and Plaintiff collapses.

## ANALYSIS

### I. Motion for Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must view the evidence and any inferences drawn from the evidence in a light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted), *Redding v. St. Eward,* 241 F.3d 530, 532 (6th Cir.2001). The burden on the moving party is satisfied where there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The trial court has some discretion to determine whether the respondent's claim is plausible. *Betkerur v. Aultman Hosp. Ass'n,* 78 F.3d 1079, 1087–8 (6th Cir.1996). *See also, Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–80 (6th Cir.1989).

### II. Individual Capacity

■ This Court must assume that Defendant Trombley is being sued in his official capacity unless the Complaint gives Trombley sufficient notice of being sued in his individual capacity. *Wells v. Brown,* 891 F.2d 591, 593 (6th Cir.1989). The caption of the case fails to state that Plaintiff is suing Trombley in his individual capacity, and the complaint alleges that Trombley was "acting within the scope of his employment", which normally indicates an official capacity claim. (Compl.¶ 33; *See Pelfrey v. Chambers,* 43 F.3d 1034, 1038 (6th Cir.1995) (allegation of action outside the scope of employment evidences notice of an individual capacity lawsuit)). However, Plaintiff seeks both compensatory and punitive damages from each Defen-

dant in the Complaint, which is consistent with an individual capacity lawsuit. (Compl. at 10.)

■■■ The failure to specify the capacity in which Plaintiff is suing is "not fatal if the course of proceedings otherwise indicates that the defendant[s] received sufficient notice" of Plaintiff's intent to sue in the individual capacity. *Moore v. City of Harriman*, 272 F.3d 769, 772, n. 1 (6th Cir.2001), quoted in *Lindsay v. Bogle*, 92 Fed.Appx. 165 (6th Cir. unpublished 2004). When examining the course of proceedings, consideration is given to "the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint, particularly claims for qualified immunity, to determine whether the defendant had actual knowledge of the potential for individual liability." *Shepherd v. Wellman*, 313 F.3d 963 at 967–8 (6th Cir.2002).

Here, the first affirmative defense listed in Defendants' Answer is qualified immunity, and they have moved for summary judgment on that basis. In addition, Plaintiff sought punitive and compensatory damages from both Defendants. Given these factors, I find that Defendant Trombley was on notice of the individual capacity claim, and therefore it may proceed.

### III. Plaintiff's Right to Speak

■■■ The first question that must be answered is whether a constitutional right would have been violated on the facts alleged. *Saucier v. Katz*, 533 U.S. 194, 200,

121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). In this case, I find that Plaintiff had no constitutional right to the speech he claims was infringed.

■■■ The Supreme Court has stated that when there is "clear and present danger of riot, disorder ... or other immediate threats to public safety, peace, or order appears, the power of the state to prevent or punish is obvious." *Feiner v. New York*, 340 U.S. 315, 320, 71 S.Ct. 303, 95 L.Ed. 295 (1951). *See also Brandenburg v. Ohio*, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969) (speech directed to inciting or producing imminent lawless action and is likely to produce such action is not protected by First Amendment). To determine whether the Free Speech Clause of the First Amendment protects the speech or conduct at issue in a particular case, a court must consider the particular events and circumstances that occurred near the time and at the moment of the speech and the government's action to stop that speech. *See, e.g., Hess v. Indiana*, 414 U.S. 105, 107–09, 94 S.Ct. 326, 38 L.Ed.2d 303 (1973); *Sandul v. Larion*, 119 F.3d 1250, 1255–56 (6th Cir.1997).

It is clear from the videotape that officers, including Defendant Trombley, were trying to arrest individuals who were not cooperative following a bar fight. It is also clear from the videotape that while observing these arrests, Plaintiff was expressing frustration with the officers to other members of the crowd (all or most of which were patrons of that bar), and was speaking for some time.[3] Given the cir-

---

**3.** I recognize that Plaintiff claims he never yelled, spoke only a few short phrases, and spoke those directly to the officers and not the crowd. However, I find Plaintiff's claims implausible, given the videotape evidence whose high quality gives a clear picture of Plaintiff's disputed actions. *See United States v. Weisz*, 718 F.2d 413, 431 (C.A.D.C.1983) (videotape as irrefutable evidence); *Forrester v. City of San Diego*, 25 F.3d 804, 807 (9th Cir.1994)

("The extensive use of video scenes of exactly what took place removed much argument and interpretation of the facts themselves."); *cf. Gaddis v. Redford Township*, 364 F.3d 763, 773 (6th Cir.2004) (videotape was too blurry to determine key fact of whether decedent had a knife); *Headwaters Forest Def. v. County of Humboldt*, 211 F.3d 1121, 1132 n. 5 (9th Cir.2000) (videotape raised more questions than it answered).

cumstances (a plaintiff who was animatedly criticizing officers' conduct to a crowd of bar patrons immediately following a bar fight and some contentious arrests), I find Plaintiff's speech was directed to inciting or producing lawless action, and was likely to produce such action. As a matter of law, therefore, Plaintiffs' speech was not protected by the First Amendment.

## IV. Qualified Immunity

■ Even if Defendant police officers violated Plaintiff's First Amendment rights, I believe that Defendant Trombley is entitled to qualified immunity.

■ In *Harlow v. Fitzgerald,* the Supreme Court held that "government officials performing discretionary functions" are entitled to a qualified immunity from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. 800 at 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Courts deciding whether a party is entitled to qualified immunity must consider: (1) whether, based on the facts, viewed in a light most favorable to the party asserting the injury, the officer's conduct violated a constitutional right; and (2) if so, "whether the law clearly established that the officer's conduct was unlawful in the circumstances of the case." *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *see also Brosseau v. Haugen,* —— U.S. ——, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004).

■ The Sixth Circuit teaches that "[f]or a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Burchett v. Kiefer,* 310 F.3d 937, 942 (6th Cir.2002); citing *Russo v. City of Cincinnati,* 953 F.2d 1036, 1042 (6th Cir.1992). Whether an officer

would understand that his or her conduct violates an individual's right can be measured objectively and is a matter of law for a court to decide. *Brandenburg v. Cureton,* 882 F.2d 211, 215 (6th Cir.1989). If a reasonable person in the officer's situation could fail to realize the action would violate an individual's rights, then the officer is entitled to qualified immunity. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

As discussed above, I believe Plaintiff's speech was not constitutionally protected, and thus, I believe a reasonable person in the officer's situation would not know the officer's conduct violated an individual's rights. Even if Plaintiff's speech was protected, the case law does not clearly establish that the officer's conduct was illegal due to the fact-intensive nature of that determination, and consequently, Defendant Trombley is entitled to qualified immunity. In *Spier v. Elaesser,* an individual received a disorderly conduct citation for chanting, in a rallying crowd, anti-police statements, and those statements were held to be constitutionally protected. 267 F.Supp.2d 806 (S.D.Ohio 2003). Noting that its ruling that the statements were protected relied on the finding that the plaintiff had not yet "stirred up the crowd past the point of the First Amendment's protection of his speech," and that such a determination is difficult to make, that court concluded that a reasonable police officer, based upon the total circumstances confronted by the defendant, could reach a different conclusion. *Id.* at 812. Here, the situation is similar: even if Plaintiff's speech was not protected because the crowd was insufficiently stirred up, a reasonable police officer in Trombley's position might conclude differently.

For the reasons above, therefore, I GRANT summary judgment in favor of Defendant Trombley on the federal claim.

## V. Municipal Liability

Plaintiff's complaint alleges that the municipality should be liable under a policy and practice theory and a failure to train theory. Plaintiff offers absolutely no evidence of any kind of either a policy and practice or a failure to train the officers, and fails to respond to the arguments made in Defendants' motion on this point in his response to the motion. Therefore, I GRANT summary judgment in favor of Defendant City of Roseville on the federal claim.

## VI. State Law Claims

This Opinion and Order disposes of the federal claims before this Court. I decline to exercise supplemental jurisdiction over the state law claims for malicious prosecution and assault and battery and therefore DISMISS these claims without prejudice. *See City of Chicago v. Int'l Coll. of Surgeons,* 522 U.S. 156, 172–73, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997); *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); 28 U.S.C. § 1367(c)(2).

## CONCLUSION

I GRANT summary judgment in favor of Defendants on the federal claim. I DISMISS WITHOUT PREJUDICE the remaining state law claims.

**IT IS SO ORDERED.**