Delores Marie SWEKEL,
Plaintiff–Appellant,

v.

CITY OF RIVER ROUGE, Defendant,

Gregory Harrington, William Abair, Johnson Taylor, William Cooper, and David Israel, Defendants–Appellees.

No. 95–2031.

United States Court of Appeals,
Sixth Circuit.

Argued for Appellant
Oct. 18, 1996.

Submitted for Appellees
Oct. 18, 1996.

Decided July 23, 1997.

Thomas G. McHugh (briefed), Mt. Clemens, MI, Morgan J.C. Scudi (argued and briefed), Huth, Lynett & Scudi, San Diego, CA, for Plaintiff–Appellant.

Michael H. Feiler, Farmington Hills, MI, for Defendant City of River Rouge.

Kurt A. Olson, F. Dennis Luke Assoc., Allen Park, MI, John J. Cibrario (briefed), Westland, MI, for Defendants–Appellees Gregory Harrington, William Abair, and Johnson Taylor.

Andrew R. Grifka, Livonia, MI, John J. Cibrario, Westland, MI, for Defendants–Appellees William Cooper and David Israel.

Before: MERRITT, JONES, and COLE, Circuit Judges.

JONES, J., delivered the opinion of the court, in which COLE, J., joined. MERRITT, J. (pp. 1264–65), delivered a separate concurring opinion.

## OPINION

NATHANIEL R. JONES, Circuit Judge.

Plaintiff, Delores Swekel, appeals the district court's *sua sponte* dismissal of her suit under 42 U.S.C. § 1983 claiming that Defendants denied her access to the courts. Because Swekel failed to present evidence that the Defendants' actions rendered a state court remedy ineffective, we now AFFIRM.

## I.

On September 30, 1988, at approximately 11:00 p.m., Arnold F. Swekel attempted to cross a street in River Rouge, Michigan. While crossing the street, either one or two cars speeding down the street hit and fatally injured Mr. Swekel.

After the accident, Officer Dwight Black went to the scene and interviewed witnesses. Apparently four witnesses told Officer Black that two cars were involved in the accident. Officer Black then filed a police report that provided a description of the two vehicles involved. After filing the report, Officer Black was removed from the case. Additionally, the daily log sheets for the night of September 30, 1988, disappeared after the incident. The Plaintiff alleges that the log sheet would reveal that the incident involved two vehicles.

Mr. Swekel was in the hospital for seventeen days before he passed away on October 17, 1988. Delores Swekel ("Swekel"), the widow and personal representative of the estate of the decedent, allegedly requested that the police interview him during this period, but they declined.

Swekel claims that following the accident the police engaged in an immediate cover up of the second driver because he was the son of a high-ranking police officer. She alleges that even though the witnesses stated two drivers were involved, and all of the evidence pointed towards the high-ranking police officer or his son, the police never investigated either of them.

According to Swekel the Defendants: (1) failed to perform forensic tests on Mr. Swekel's clothes; (2) ignored the responding officer's report that two cars were involved; (3) told the responding officer not to attend the preliminary hearing, though it is customary for the responding officer to attend; (4) ignored anonymous tips stating that Russel Kulinski, a police commander at the time of the accident, or his son, Todd, was one of the

drivers who struck Mr. Swekel; (5) refused to investigate the link between the Kulinskis and the second driver; (6) refused to interview Todd Kulinski; and (7) failed to disclose to Plaintiff the anonymous tips implicating the Kulinskis, despite the fact that Plaintiff told the police that she suspected Todd Kulinski.

Swekel successfully pursued a wrongful death action against the first driver. She claims that Defendants' actions deprived her of a similar suit against the second driver, because she could not discover his identity before her time to file suit expired under the Michigan statute of limitations. In fact, she claims that she did not discover the identity of the second driver until discovery in this suit. Swekel's attorney believed that as a result of the police cover up, he lacked the evidence to file suit and would have subjected himself to sanctions if he filed suit.

The federal case for denial of access to the courts was set to go to trial on May 15, 1995. On May 11, 1995, the district court ordered Swekel to show cause why it should not dismiss the case in light of *Joyce v. Mavromatis*, 783 F.2d 56 (6th Cir.1986) (holding that plaintiff was not denied access to courts if she could file a viable suit in state court). In her brief to the district court, Swekel argued that the Defendants' cover-up of the identity of the second driver caused the statute of limitations to run and, thus, amounted to her legally being barred from filing suit. The district court disagreed and held that she could have filed a "John Doe" suit against the second driver in state court and then amended it when she discovered the second driver's identity.

The district court found that Swekel possessed a sufficient factual basis to file a "John Doe" suit in state court. These facts are as follows: On December 5, 1989, the Plaintiff deposed Estel Chaffins, who testified that two cars were involved in the accident. Furthermore, in another deposition taken on June 28, 1989, Plaintiff's counsel asked an accident witness whether he knew Todd Kulinski Finally, in early 1990, Plaintiff's counsel sent a copy of Mr. Chaffins's statement to the police and requested that they re-open the case. These actions demonstrated to the district court that Swekel knew of a second driver before the three-year statute of limitations had run and could have filed a suit in state court against a "John Doe" defendant. The district court conceded that "John Doe" suits do not toll the statute of limitations in Michigan, *see, e.g., Fazzalare v. Desa Indus., Inc.,* 135 Mich.App. 1, 6, 351 N.W.2d 886 (1984), but reasoned that with the aid of discovery Swekel may have been able to discover the identity of the second driver before the statute ran. Consequently, the district court granted summary judgment to Defendants *sua sponte*.

Swekel moved for reconsideration, which the district court denied. She then filed this timely appeal.

## II.

"We review a district court's grant of summary judgment *de novo.* ... [I]n a motion for summary judgment, 'credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.... The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Russo v. City of Cincinnati,* 953 F.2d 1036, 1041–42 (6th Cir.1992) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986), and citing *Vollrath v. Georgia–Pacific Corp.,* 899 F.2d 533, 534 (6th Cir.), *cert. denied,* 498 U.S. 940, 111 S.Ct. 345, 112 L.Ed.2d 310 (1990)); *see also Rowley v. United States,* 76 F.3d 796, 799 (6th Cir.1996). Summary judgment is appropriate when the record "shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgement as a matter of law." Fed.R.Civ.P. 56(c).

On appeal, Plaintiff argues Defendants denied her the right of access to the courts by covering-up for a high-ranking police officer and his son. "It is beyond dispute that the right of access to the courts is a fundamental right protected by the Constitution." *Graham v. National Collegiate Athletic Ass'n,* 804 F.2d 953, 959 (6th Cir.1986).

In fact, the right of access to the courts finds support in several provisions of the Constitution including: the Due Process Clause of the Fourteenth Amendment, *Wolff v. McDonnell,* 418 U.S. 539, 579, 94 S.Ct. 2963, 2986, 41 L.Ed.2d 935 (1974), the Equal Protection Clause, *Pennsylvania v. Finley,* 481 U.S. 551, 557, 107 S.Ct. 1990, 1994, 95 L.Ed.2d 539 (1987), the First Amendment, *Turner v. Safley,* 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987)(citing *Johnson v. Avery,* 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969)), and the Privileges and Immunities Clause of Article IV, *see, e.g., Chambers v. Baltimore & Ohio R.R. Co.,* 207 U.S. 142, 148, 28 S.Ct. 34, 35, 52 L.Ed. 143 (1907); *Smith v. Maschner,* 899 F.2d 940, 947 (10th Cir.1990).

■■■ The right of access in its most formal manifestation protects a person's right to physically access the court system. Without more, however, such an important right would ring hollow in the halls of justice. *See Chambers,* 207 U.S. at 148, 28 S.Ct. at 35 ("In an organized society it is the right conservative of all other rights, and lies at the foundation of orderly government. It is one of the highest and most essential privileges of citizenship...."). Access to courts does not only protect one's right to physically enter the courthouse halls, but also insures that the access to courts will be "adequate, effective and meaningful." *Bounds v. Smith,* 430 U.S. 817, 822, 97 S.Ct. 1491, 1495, 52 L.Ed.2d 72 (1977). Therefore, if a party engages in actions that effectively cover-up evidence and this action renders a plaintiff's state court remedy ineffective, they have violated his right of access to the courts. *See Bell v. City of Milwaukee,* 746 F.2d 1205, 1261 (7th Cir.1984) ("To deny such access defendants need not literally bar the courthouse door or attack plaintiffs' witnesses."). Otherwise, to what avail would it be to arm a person with such a constitutional right, when the courtroom door can be hermetically sealed by a functionary who destroys the evidence crucial to his case. A contrary interpretation of this right would encourage "police officials to conceal the circumstances relating to unlawful killing committed under color of state law and other deprivations of federal rights Section 1983 was designed to remedy." *Id.*

Several courts have found that a state official's actions in covering-up evidence amounted to a denial of access to the courts. For example, in *Bell, supra,* the police covered up a murder by one of their officers by concealing key facts from the family of the murder victim. *Id.* at 1215–17. The court found that "a conspiracy to cover up a killing, thereby obstructing legitimate efforts to vindicate the killing through judicial redress, interferes with the due process right of access to courts." *Id.* at 1261. The court reasoned that the "constitutional right [of access to the courts] is lost where, as here, police officials shield from the public and the victim's family key facts which would form the basis of the family's claims for redress." *Id.*

In *Ryland v. Shapiro,* 708 F.2d 967 (5th Cir.1983), the parents of a murder victim filed suit alleging that two prosecutors covered up the fact that a murder had occurred and that the murderer was a fellow prosecutor. The plaintiffs claimed that by concealing such facts for eleven months, the defendants had caused them to delay bringing a wrongful death action against the murderer, and thus "wrongfully interfer[ed] with their access to the state courts." *Id.* at 969–70. The Fifth Circuit held that the delay created by the defendants could be a constitutional deprivation if the conduct prejudiced the plaintiff's chances of recovery in state court. *Id.* at 974.

In another denial of access case, *Crowder v. Sinyard,* 884 F.2d 804 (5th Cir.1989), *cert. denied,* 496 U.S. 924, 110 S.Ct. 2617, 110 L.Ed.2d 638 (1990), *abrogated on other grounds by Horton v. California,* 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), the Fifth Circuit summarized *Ryland* as follows:

> *Ryland* stands for the proposition that if state officials wrongfully and intentionally conceal information crucial to a person's ability to obtain redress through the courts, and do so for the purpose of frustrating that right, and that concealment and the delay engendered by it substantially reduce the likelihood of one's obtain-

ing the relief to which one is otherwise entitled, they may have committed a constitutional violation.

*Id.* at 812. The plaintiffs in *Crowder* claimed that the defendants seized their property and removed it from Texas to Arkansas, denying them the ability to bring suit in Texas to recover their property. *Id.* at 813. The court found that the plaintiffs were not denied access to the courts, and that the defendants were amenable to suit under the Texas Long Arm Statute. *Id.* at 814. The Fifth Circuit held that even though the property was removed from Texas, the plaintiffs had unimpeded meaningful access to both the state and federal courts to challenge the legality of the defendants' actions. *Id.*

The Defendants argue that this court's decision in *Joyce v. Mavromatis, supra,* is dispositive in this case. In *Joyce,* the plaintiff alleged that she was injured in an accident caused by the son of the Steubenville, Ohio, police chief. 783 F.2d at 57. She filed a § 1983 action claiming that the defendants, police officers, "sought to defeat her state court damage suit by revoking a traffic citation issued to the son [of the police chief] ... in connection with the accident and by altering the police report filed by ... the officer who investigated the accident and by having new lines painted on the street at the intersection." *Id.* She argued that these actions violated her right to due process, access to the courts, and equal protection. The district court dismissed that action. This court affirmed. *Id.* The plaintiff knew the identity of the defendant, had a pending state court damage suit when the actions occurred, and could bring these allegations to the attention of the state court judge. Thus, the defendants did not deny her access to the courts, because she had all of the relevant facts at

her disposal. Furthermore, this court found that "there is no reason to believe that an Ohio court and jury would be unavailable and would not do justice between the parties. Rather than having denied access, the defendants have opened themselves to punitive damages and converted a small claims matter into a significant case, albeit not a federal case." *Id.*

The crucial distinction between the *Joyce* decision and this case is that the plaintiff in *Joyce* knew the identity of the defendant and had all of the requisite facts to file suit. Moreover, it appears that at the time the *Joyce* defendants took these actions, the plaintiff already had a pending "state court damage suit." *Id.* Thus, the *Joyce* plaintiff was not denied access to the court. None of the alleged abuses prevented her from filing suit or obtaining effective redress. *See Thompson v. Boggs,* 33 F.3d 847, 852–53 (7th Cir.1994); *Foster v. City of Lake Jackson,* 28 F.3d 425, 430 (5th Cir.1994). Therefore, *Joyce* is not dispositive of this case.

 A court must analyze several factors before deciding whether a person's fundamental right of access to the courts has been violated. First, a court must ascertain whether the abuse occurred pre- or post-filing. When the abuse transpires post-filing, the aggrieved party is already in court and that court usually can address the abuse, and thus, an access to courts claim typically will not be viable.[1] If the abuse occurs pre-filing, then the plaintiff must establish that such abuse denied her "effective" and "meaningful" access to the courts. *Bounds,* 430 U.S. at 822, 97 S.Ct. at 1495. She can do this only by showing that the defendants' actions foreclosed her from filing suit in state court

---

1. Our decision to limit the right of access to the courts to pre-filing abuses in most instances finds support in both the Fifth and Seventh Circuits. In *Foster v. City of Lake Jackson,* 28 F.3d 425 (5th Cir.1994), the plaintiffs claimed the defendant's failure to maintain a traffic light caused their son's death, and that the defendants denied them access to the courts by concealing and suppressing evidence during discovery. *Id.* at 427. The Fifth Circuit held that "the right of access [to the courts] ... encompasse[s] a right to file an action, but not the right to proceed free of discovery abuses after filing." *Id.* at 430.

The Seventh Circuit reached a similar conclusion in *Thompson v. Boggs,* 33 F.3d 847 (7th Cir.1994), *cert. denied,* 514 U.S. 1063, 115 S.Ct. 1692, 131 L.Ed.2d 556 (1995). In *Thompson,* the plaintiff claimed the police used excessive force and denied him access to the courts by omitting critical facts in their police reports. *Id.* at 852. The Seventh Circuit held that the defendants' actions did not amount to a denial of the plaintiff's right to access the courts because the plaintiff was present at the scene, knew all of the facts, and had sufficient facts to promptly file a law suit. *Id.* at 852–53.

or rendered ineffective any state court remedy she previously may have had. *See Crowder,* 884 F.2d at 812–13; *Bell,* 746 F.2d at 1261; *Ryland,* 708 F.2d at 974–75. In most instances, state courts can address pre-filing abuses by tolling the statute of limitations or allowing for a "spoliation of evidence" lawsuit.

■ The case at bar involves alleged pre-filing abuses. Swekel claims that the Defendants effectively denied her access to courts by failing to investigate the possibility of a second driver and covering up any such evidence. She claims that the Defendants' actions caused Michigan's three-year statute of limitations to run before she could file suit. We agree with Swekel, that if true, the Defendants' actions are reprehensible. Yet, that is not the issue before us. Instead, we must determine whether their actions amounted to a constitutional violation.

The alleged actions occurred pre-filing, and thus, Swekel bears the burden of showing that such actions foreclosed her from filing suit in state court. The most compelling evidence would be if Swekel went to the state courthouse and was physically prevented or mechanically barred from filing her lawsuit or her suit was dismissed as untimely. Swekel has not presented any such evidence. Therefore, we agree with the district court that Swekel has failed to show absolute denial from state court.

Our inquiry, however, does not conclude at this point. This case does not involve an issue of whether the Plaintiff could enter the courthouse and file suit, but instead whether filing such a suit was rendered ineffective by the Defendants' actions.

■ Swekel alleges that the police covered-up proof against one of their own, destroyed critical evidence, and delayed Swekel's own investigation. These allegations, if true, would substantially prejudice Swekel's ability to recover in state court. Delay alone causes "stale evidence and the fading of material facts in the minds of potential witnesses." *Ryland,* 708 F.2d at 975; *see also*

*Rheuark v. Shaw,* 628 F.2d 297, 303–04 n. 10 (5th Cir.1980) (citation omitted) ("Delay haunts the administration of justice.... The most erratic gear in the justice machinery is at the place of fact finding, and possibilities for error multiply rapidly as time elapses between the original fact and its judicial determination."), *cert. denied,* 450 U.S. 931, 101 S.Ct. 1392, 67 L.Ed.2d 365 (1981). Swekel, however, never presented evidence that the state court could not adequately address these problems.[2] In fact, none of the evidence before this court establishes that Swekel even attempted to go to the state court in first instance. Before filing an "access to courts" claim, a plaintiff must make some attempt to gain access to the courts; otherwise, how is this court to assess whether such access was in fact "effective" and "meaningful"?

A plaintiff cannot merely guess that a state court remedy will be ineffective because of a defendant's actions. Rather, the plaintiff must present evidence that the defendants' actions actually rendered any available state court remedy ineffective. Swekel has failed to do so.

### III.

Accordingly, we **AFFIRM** the district court's grant of summary judgment.

MERRITT, Circuit Judge, concurring.

I agree with the result reached and much of the reasoning of the Court's opinion. But I do not agree with the pre-filing/post-filing distinction made by the Court or its failure to make explicit the limitations on right of access claims.

In 1986, in the same kind of auto accident case as this one (involving the cover-up of evidence by a police chief of his son's negligence), a unanimous court held:

The First Amendment access-to-the-courts claim does not state a cause of action either. The plaintiff has the right under state law to file her damage suit and to offer proof about the accident and the al-

---

2. We recognize that in some instances it would be completely futile for a plaintiff to attempt to access the state court system. The Plaintiff, however, has not presented evidence that this is such a case.

leged destruction of relevant evidence. If she is able to prove that the police chief's son and his confederates undertook to destroy evidence of the son's negligence as a driver, there is no reason to believe that an Ohio court and jury would be unavailable and would not do justice between the parties. Rather than having denied access, the defendants have opened themselves to punitive damages and converted a small claims matter into a significant case, albeit not a federal case.

*Joyce v. Mavromatis*, 783 F.2d 56 (6th Cir. 1986). The court in *Joyce* did not make the case turn on whether the state court lawsuit had already been filed or not, and the court's opinion treats this distinction as irrelevant. It treats it as irrelevant because if a state court is able to deal adequately with cover-up activities that occur after an action has been filed, the state court is equally able to deal with such activities that occur before the action is filed. A potential plaintiff is no less likely to receive adequate relief in state court merely because her allegations of a cover-up are placed in her initial complaint rather than in a motion or other pleading following the initiation of the case.

The standard for a "right-of-access-to-the-courts" claim, whether treated under the First Amendment as part of the right "to petition the government for a redress of grievances" or as a procedural due process claim, should require that the plaintiff allege and prove that the state's judicial process does not provide fair procedures to remedy the wrong alleged. Proof of the lack of adequate state remedies is required by *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), and *Vicory v. Walton*, 721 F.2d 1062 (6th Cir.1983), in procedural due process cases and should be required in judicial access cases. It seems elementary that the federal right of access to the courts is not abridged when the state courts remain just as open to provide a remedy as the federal courts.

A concealment of evidence that would merely toll the running of the state statute of limitations or give rise to a state action for "spoliation of evidence" [1] does not "deny access" to state courts. There must be an allegation and then a showing that the doors of the state courthouse have been closed by the defendant's action or that the state court remedy has been rendered ineffective. We should not simply displace the normal state court remedies for spoliation or concealment of evidence or obstruction of state judicial proceedings with a new, expanded, loosely worded, federal constitutional tort under § 1983. Right of access to the courts claims under the federal constitution should be reserved for situations in which adequate state remedies are made unavailable and should not include mere claims of interference with evidence.

---

**1.** In *Smith v. Howard Johnson Company, Inc.*, 67 Ohio St.3d 28, 615 N.E.2d 1037, 1038 (1993), a United States District Court certified to the Supreme Court of Ohio a list of questions concerning the existence of the tort of "intentional or negligent spoliation of evidence and/or tortious interference with prospective civil litigation." The Ohio Supreme Court unanimously answered the questions as follows:

We answer the three questions as follows: (1) a cause of action exists in tort for interference with or destruction of evidence; (2a) the elements of a claim for interference with or destruction of evidence are (1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts; (2b) such a claim should be recognized between the parties to the primary action and against third parties; and (3) such a claim may be brought at the same time as the primary action.

Although the instant case comes from Michigan rather than Ohio, there is no suggestion that Michigan would not provide a remedy in tort for the wrong alleged here.