**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 06a0182n.06**
**Filed: March 14, 2006**

**No. 05-1322**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| SOVIRD SIMS, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| PENNY LANDRUM, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |

Before: SUTTON and GRIFFIN, Circuit Judges; OBERDORFER, District Judge.[*]

SUTTON, Circuit Judge. At 2:48 p.m. on July 1, 2004, Sovird Sims, a Michigan prisoner, gave Penny Landrum, the Assistant Resident Manager of the Southern Michigan Correctional Facility, mail related to his direct criminal appeal to the Michigan Supreme Court. The mail was not received by the Michigan Supreme Court until July 12, four days after the Court's filing deadline, and as a result the Court dismissed the appeal as untimely. Sims filed an action under 42 U.S.C § 1983 against Landrum for allegedly violating his First and Fourteenth Amendment right of access to the courts by failing to ensure that the prison processed his mail the next day. The district court dismissed the suit, concluding that Sims had failed to state a cognizable claim because

---

[*] The Honorable Louis F. Oberdorfer, United States District Court Judge for the District of Columbia, sitting by designation.

No. 05-1322
*Sims v. Landrum*

Landrum's actions complied with the prison's mail policy and because her actions at most amounted to negligence. We affirm.

I.

On May 13, 2004, the Michigan court of appeals denied Sovird Sims' motion to reconsider its dismissal of his criminal appeal. Michigan law gave Sims 56 days to file an application for discretionary leave to appeal the denial to the Michigan Supreme Court. *See* Mich. Ct. R. 7.302(C)(2). On July 1, 2004, Sims delivered his application for leave to appeal and his filing-fee information to Penny Landrum, the Assistant Resident Manager of his prison unit. Landrum accepted the mail at 2:48 p.m. that day. She did not work the next business day, Friday, July 2, and the following three days were not business days in view of the Independence Day holiday. The mail accordingly was not sent until Tuesday, July 6 at 11:00 a.m. Sims' 56-day window for appeal expired on Thursday, July 8, and his appellate papers did not arrive at the Michigan Supreme Court until Monday, July 12.

After the Michigan Supreme Court notified Sims that his appeal was untimely, he filed an administrative complaint against the prison. At each of the three levels of the prison grievance process, Sims contended that he had told Landrum that "the papers[] must be at the court on 7-8-04," JA Ex. 6, and that the prison's "governing policy directive" states that "[i]f not received by 10:00 a.m., [mail] will be processed as soon as possible, but it is not required to be processed . . . until the next business day," C.F.A. § 05.03.118(v)(2). Because Landrum did not work on Friday, July 2,

Sims noted that she did not begin to process his mail until the following business day, Tuesday, July 6, which (he asserted) violated the prison's policy. At steps one and two of the grievance process, the prison responded that under its policy "[l]egal mail that a prisoner is sending via disbursement shall be mailed as soon as possible but no later than two business days after the business day it was initially received by Department staff." C.F.A. § 05.03.118 (C); *see also* JA Ex. 7, 9. The prison also explained that under the policy any mail turned in after 10:00 a.m. is treated as having been received on the following business day. Under these policies, the prison reasoned, Sims' mail was not "received" until July 2, and prison officials had until July 7 to mail it. Because the mail was sent one day earlier, on July 6, the prison denied the grievance. The prison also declined to grant relief at step three of the grievance process.

After completing the grievance process, Sims filed this § 1983 claim on December 30, 2004, in the United States District Court for the Eastern District of Michigan, claiming an unconstitutional denial of access to the courts. The district court dismissed the claim under 28 U.S.C. § 1915(e)(2)(B)(ii), which permits the sua sponte dismissal of an *in forma pauperis* suit when the court determines that the claimant has failed to state a claim upon which relief may be granted. The court noted that a plaintiff must demonstrate "intentional" behavior to establish an "access to the courts violation under § 1983" and concluded that Sims' allegations about Landrum's behavior in this case "at best[] establish merely that the defendant may have been negligent in handling plaintiff's legal mail." *Sims v. Landrum*, No. 04-74945-DT, at *2–3 (E.D. Mich. Jan. 11, 2005).

II.

We review de novo a district court's decision to dismiss an inmate's § 1983 claim under 28 U.S.C. § 1915(e)(2). *See Dotson v. Wilkinson*, 300 F.3d 661, 663 (6th Cir. 2002). And we review the facts in the complaint and all reasonable inferences drawn from them in the light most favorable to the plaintiff. *Id*.

The background legal principles that govern this dispute are reasonably well settled. Prisoners have a First and Fourteenth Amendment right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 354 (1996). In assessing whether a State has violated that right, we ask whether the claimant has demonstrated an "actual injury," *see Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005), and, if so, whether the claimant has alleged that more than mere negligence by the state actor caused the injury, *see Gibbs v. Hopkins*, 10 F.3d 373, 379 (6th Cir. 1993) ("These actions, if proven, and if intentional, support the claim that prison officials are attempting to deny prisoners effective access to the courts."); *Simkins v. Bruce*, 406 F.3d 1239, 1242 (10th Cir. 2005) ("[P]laintiff's claim that a right of access to the courts has been impeded requires him to allege intentional conduct interfering with his legal mail, and does not require an additional showing of malicious motive. By contrast, when access to courts is impeded by mere negligence, as when legal mail is inadvertently lost or misdirected, no constitutional violation occurs.") (citations and footnote omitted); *Scheeler v. City of St. Cloud*, 402 F.3d 826, 830 (8th Cir. 2005) ("[O]ur circuit has held that the right to access derives from the First Amendment. In order to prevail on such a claim, the Scheelers must show that the defendants acted with some intentional motivation to restrict their access to the courts.")

(citations omitted); *Snyder v. Nolen*, 380 F.3d 279, 291 n.11 (7th Cir. 2004) ("[A]n allegation of simple negligence will not support a claim that an official has denied an individual of access to the courts."); *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1277 (3d Cir. 1994) ("It is [ ] clear that a negligent deprivation of Due Process will not sustain a § 1983 claim."); *see also County of Sacramento v. Lewis*, 523 U.S. 833, 848–49 (1998) ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process."); *Daniels v. Williams*, 474 U.S. 327, 328 (1986) ("We conclude that the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property."). "To survive a motion to dismiss . . . , a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory. Nonetheless, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005) (citation omitted). We previously have held that if a prisoner misses a filing deadline as a result of "interference" by the prison, he has met the actual-injury requirement. *Harbin-Bey*, 420 F.3d at 578.

In this instance, while Sims can show that his pleadings arrived late to the Michigan Supreme Court, he has failed to allege that his injury resulted from anything more than negligence. *See Wojnicz v. Davis*, No. 03-1017, 2003 U.S. App. LEXIS 15325, at *6 (6th Cir. July 29, 2003) ("In order to establish an access to the courts violation under § 1983, a prisoner must prove that the violation was intentional, not merely negligent."); *see also Pink v. Lester*, 52 F.3d 73, 76 (4th Cir. 1995) ("Negligent official conduct does not instantly become actionable under § 1983 because it is

termed an infringement of the right to petition rather than a violation of due process. Just as the claim [of injury resulting from a prisoner slipping on a negligently discarded pillow in *Daniels v. Williams*, 474 U.S. 327 (1986)] lacked relation to the purposes of the Fourteenth Amendment, so too the claim here has little to do with the broad guarantees of the First Amendment.").

The prison's mail policy states that prison personnel may take up to two business days to process inmate mail, and Sims does not challenge the validity of that policy. *See* C.F.A. § 05.03.118 ("Legal mail that a prisoner is sending via disbursement shall be mailed as soon as possible but no later than two business days after the business day it was initially received by Department staff."); *id*. ("If received on Tuesday, 9/4/01, at 3:00 p.m. [ ], [mail] has to be in the post office as soon as possible but no later than the end of the business day on Friday, 9/7/01.").

In this case, Sims has alleged only that Landrum, knowing that his papers were due in court on July 8, knowing that she was going to be absent on July 2 and knowing that her next work day would be July 6, violated his rights by not asking a colleague to process his mail in the interim. But these facts, without more, show at most that Landrum acted negligently, not that she acted with the intent to deprive Sims of access to the courts. While Sims' complaint goes on to say that Landrum's behavior showed "reckless and callous indifference to [his] federally protected right," the unchallenged and well-known prison mail policy makes that statement unsustainable. Adherence to an accepted mail policy cannot establish recklessness or callousness.

Attempting to overcome this concern, Sims points out that Landrum previously delayed the processing of a piece of his mail. *See* Complaint ¶ 18. Yet Sims neither alleges that Landrum acted intentionally during this previous occasion nor that the delay violated prison rules. And Sims admits that Landrum on still another occasion processed his mail the very next day. *See* JA Ex. 3. These incidents, in the absence of any allegation that Landrum intentionally slowed the processing of his mail either then or now in violation of prison policy, do not aid Sims' case. Nor can merely alleging recklessness without alleging facts to support the assertion save the claim from dismissal. *See Lanier v. Bryant*, 332 F.3d 999, 1007 (6th Cir. 2003) ("Conclusory, unsupported allegations of the deprivation of rights protected by the United States Constitution or federal laws are insufficient to state a claim."). On these allegations, we conclude that Landrum's behavior did not constitute anything more than regrettable, but non-cognizable, negligence.

Nor does *Swekel v. City of River Rouge*, 119 F.3d 1259 (6th Cir. 1997), alter this conclusion. That case, which denied the claimant relief, says only that where there is pre-filing abuse, there may be grounds for a separate "access to the courts" lawsuit. *Id*. at 1263–65. No such allegation has been made here.

### III.

For these reasons, we affirm.