NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0220n.06

Case No. 26-5433

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| TONY VON CARRUTHERS, | ) | **FILED** |
|  | ) | May 20, 2026 |
| Plaintiff-Appellant, | ) | KELLY L. STEPHENS, Clerk |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE UNITED |
|  | ) | STATES DISTRICT COURT FOR |
|  | ) | THE MIDDLE DISTRICT OF |
| JONATHAN THOMAS SKRMETTI, | ) | TENNESSEE |
| Attorney General, Tennessee et al., | ) |  |
|  | ) | OPINION |
| Defendants-Appellees. | ) |  |
|  | ) |  |
|  | ) |  |

Before: READLER, MURPHY, and MATHIS, Circuit Judges.

PER CURIAM. Tony Carruthers is a Tennessee capital prisoner whose execution is scheduled to proceed on Thursday, May 21, 2026, at 10:00 a.m. He brought an action under 42 U.S.C. § 1983 seeking injunctive and declaratory relief, arguing that Tennessee's Post-Conviction Fingerprint Analysis Act of 2021 ("Fingerprint Act") and Post-Conviction DNA Analysis Act of 2001 ("DNA Act") are unconstitutional. The district court denied preliminary injunctive relief to Carruthers. Carruthers appeals the district court's decision and moves to stay his execution. For the reasons below, we affirm and we deny Carruthers's motion to stay execution.

## I.

In 1996, a jury convicted Carruthers of three counts of first-degree murder and imposed a death sentence for each count. *Carruthers v. Mays*, 889 F.3d 273, 276 (6th Cir. 2018). We previously summarized the circumstances that led to the charges and convictions as follows:

> In February of 1994, Carruthers and an accomplice, James Montgomery, assaulted two men and a woman, robbed them, then buried the three alive. The victims' bodies were found buried in a cemetery in Memphis, Tennessee about a week after they had disappeared. The jury found that the aggravating circumstances surrounding Carruthers's crimes outweighed the mitigating circumstances beyond a reasonable doubt.

*Id.* at 276–77 (citation modified). Carruthers represented himself at trial.

## II.

While the appellees raise a number of jurisdictional objections, including questions regarding the *Rooker-Feldman* doctrine and Article III standing, we can affirm the denial of a preliminary injunction and deny the stay on the merits. *See Arizona v. Biden*, 40 F.4th 375, 390 (6th Cir. 2022) (considering whether the plaintiffs were likely to succeed on the merits of their claim when their standing was in doubt). We turn first to Carruthers's due-process claims. The Fourteenth Amendment protects against the deprivation of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The procedural-due-process component of this Amendment requires "the government to provide fair procedure before depriving a person of life, liberty, or property." *Lifestyle Communities., Ltd. v. City of Worthington*, 165 F.4th 1013, 1026 (6th Cir. 2026) (citation modified). So to prevail on a procedural-due-process claim, a plaintiff must show (1) "deprivation by state action of a protected interest in life, liberty, or property," and (2) "inadequate state process." *Reed v. Goertz*, 598 U.S. 230, 236 (2023)

Individuals convicted of crimes in state court "have a liberty interest in demonstrating their innocence with new evidence under state law." *See Gutierrez v. Saenz*, 606 U.S. 305, 314 (2025) (citation modified). But the types of federal actions a state prisoner may bring for post-conviction DNA testing are "severely limit[ed]." *Reed*, 598 U.S. at 235 (quotation omitted). The Supreme Court has "rejected the extension of substantive due process to this area, and left slim room for the

prisoner to show that the governing state law denies him procedural due process." *Skinner v. Switzer*, 562 U.S. 521, 525 (2011) (citation modified).

Carruthers seeks to fit his § 1983 lawsuit in this "slim room" left by the Supreme Court. *Id.* He raises a procedural-due process challenge to the Fingerprint Act, the DNA Act, and Tennessee Supreme Court Rule 12.4(E).

Carruthers's procedural-due-process challenges fail because he has failed to show the deprivation of any protected liberty interest. We address each challenge in turn.

**A.**

We begin with Tennessee's Fingerprint Act. The Fingerprint Act allows petitioners to have fingerprints "analyzed and compared for identification purposes, including, but not limited to, latent print comparisons and searches in fingerprint databases." Tenn. Code Ann. § 40-30-402. Petitioners convicted of specific crimes, including first-degree murder, can ask the state court to order a fingerprint analysis of any evidence in the possession or control of the prosecution or law enforcement agency that is related to the investigation or prosecution that resulted in a conviction. *Id.* § 40-30-403.

There are two ways that a court can order an analysis—one mandatory and the other discretionary. A "court *shall* order fingerprint analysis" if it finds:

(1) A reasonable probability exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through fingerprint analysis;

(2) The evidence is still in existence and in such a condition that fingerprint analysis may be conducted;

(3) The evidence was never previously subjected to fingerprint analysis, was not subjected to the analysis that is being requested which could resolve an issue not resolved by previous analysis, or was previously subjected to analysis and the person making the motion under this part requests analysis that uses a new

method or technology that is substantially more probative than the prior analysis; and

(4) The application for analysis is made for the purpose of demonstrating innocence and not to unreasonably delay the execution of sentence or administration of justice.

*Id.* § 40-30-404 (emphasis added). And a "a court *may* order fingerprint analysis" if it determines:

(1) A reasonable probability exists that analysis of the evidence will produce fingerprint results that would have rendered the petitioner's verdict or sentence more favorable if the results had been available at the proceeding leading to the judgment of conviction;

(2) The evidence is still in existence and in such a condition that fingerprint analysis may be conducted;

(3) The evidence was not previously subjected to fingerprint analysis, was not subjected to the analysis that is now requested which could resolve an issue not resolved by previous analysis, or was previously subjected to analysis and the person making the motion under this part requests analysis that uses a new method or technology that is substantially more probative than the prior analysis; and

(4) The application for analysis is made for the purpose of demonstrating innocence and not to unreasonably delay the execution of sentence or administration of justice.

*Id.* § 40-30-405 (emphasis added).

Carruthers challenges the Fingerprint Act's exculpatory-results provision. He alleges that the authoritative construction of the statute's "reasonable probability" inquiry places "an insurmountable burden that the Legislature did not intend and that no petitioner could realistically satisfy." R. 32, PageID 1587.

To begin, "[a] criminal defendant proved guilty after a fair trial does not have the same liberty interests as a free man." *Dist. Att'y's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 68 (2009). Once a defendant has been convicted, he "has been constitutionally deprived of his liberty." *Id.* at 69 (quotation omitted). So in the post-conviction setting, the State "has more

- 4 -

flexibility in deciding what procedures are needed in the context of postconviction relief." *Id.* "When a State chooses to offer help to those seeking relief from convictions, due process does not dictate the exact form such assistance must assume." *Id.* (citation modified).

Given these considerations, the issue before us is whether Tennessee's requirements for petitioners to obtain post-conviction fingerprint testing "offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental, or transgress[] any recognized principle of fundamental fairness in operation." *Id.* (citation modified). The Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." *Dowling v. United States*, 493 U.S. 342, 352 (1990). Actions that violate fundamental fairness are those that implicate the "fundamental conceptions of justice which lie at the base of our civil and political institutions." *Mooney v. Holohan*, 294 U.S. 103, 112 (1935).

The Fingerprint Act requires a petitioner to show either: (1) "[a] reasonable probability exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through fingerprint analysis," Tenn. Code Ann. § 40-30-404 (mandatory-testing provision), or (2) "[a] reasonable probability exists that analysis of the evidence will produce fingerprint results that would have rendered the petitioner's verdict or sentence more favorable if the results had been available at the proceeding leading to the judgment of conviction," *id.* § 40-30-405 (discretionary-testing provision).

The Fingerprint Act's requirements mirror the language of the DNA Act. And because of the similarities in structure and language between these two statutes, "interpretations of the earlier DNA Analysis Act are persuasive authority for interpretations of the [Fingerprint] Act." *Howell v. State*, No. E2022-01480-CCA-R3-PC, 2023 WL 5216980, at *5 (Tenn. Crim. App. Aug. 15,

2023) (collecting cases). So the Tennessee Supreme Court's authoritative interpretation of the phrase "reasonable probability" under the DNA Act guides our analysis.

The Tennessee Supreme Court has interpreted the reasonable-probability standard to require courts to "begin with the proposition that [fingerprint] analysis will prove to be exculpatory." *Powers v. State*, 343 S.W.3d 36, 55 (Tenn. 2011). So courts must not only "consider the evidence that was presented against the petitioner at trial," but also view the evidence "in light of the effect that exculpatory [fingerprint] evidence would have had on the fact-finder or the State." *Id.* This requirement exists so that "the analysis . . . focus[es] on the strength of the [fingerprint] evidence as compared to the evidence presented at trial—that is, the way in which the particular evidence of innocence interacts with the evidence of guilt." *Id.* (citation modified).

In sum, Tennessee courts begin with the presumption that the fingerprint evidence will prove to be exculpatory but then evaluate how that evidence interacts with the other evidence of guilt at trial. So this interpretation of the reasonable-probability standard requires courts to consider the effect the sought-after fingerprint evidence would have had on the evidence at the time of trial. Such an approach is not "inconsistent with the traditions and conscience of our people or with any recognized principle of fundamental fairness." *Osborne*, 557 U.S. at 70 (citation modified).

**B.**

We turn next to the DNA Act. Carruthers also asserts that the Tennessee Supreme Court's authoritative construction of the DNA Act violates his right to procedural due process by (1) imposing a deadline on when a defendant can seek testing, and (2) limiting the evidence to be considered to the proof presented at trial.

The DNA Act is substantially similar to the Fingerprint Act. Like its counterpart, the DNA Act offers two paths to testing DNA evidence—one discretionary and one mandatory. A "court *shall* order DNA analysis" when it finds that:

(1) A reasonable probability exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through DNA analysis;

(2) The evidence is still in existence and in such a condition that DNA analysis may be conducted;

(3) The evidence was never previously subjected to DNA analysis or was not subjected to the analysis that is now requested which could resolve an issue not resolved by previous analysis; and

(4) The application for analysis is made for the purpose of demonstrating innocence and not to unreasonably delay the execution of sentence or administration of justice.

Tenn. Code Ann. § 40-30-304 (emphasis added). And a "court *may* order DNA analysis" when it finds that:

(1) A reasonable probability exists that analysis of the evidence will produce DNA results that would have rendered the petitioner's verdict or sentence more favorable if the results had been available at the proceeding leading to the judgment of conviction;

(2) The evidence is still in existence and in such a condition that DNA analysis may be conducted;

(3) The evidence was never previously subjected to DNA analysis, or was not subjected to the analysis that is now requested which could resolve an issue not resolved by previous analysis; and

(4) The application for analysis is made for the purpose of demonstrating innocence and not to unreasonably delay the execution of sentence or administration of justice.

*Id.* § 40-30-305 (emphasis added).

In April 2026, a little over a month before his scheduled execution, Carruthers sought relief under these provisions. Carruthers moved the Tennessee Supreme Court for DNA testing of

fingernail scrapings from all three victims and cloth bindings from the victims' bodies. The Tennessee Supreme Court denied his motion. Relevant here, it noted that it did not have "original jurisdiction to adjudicate an eleventh-hour DNA claim that was not timely pursued via the existing DNA Act." R. 32-13, PageID 2825.

Carruthers then filed his motion for DNA testing in the Shelby County Criminal Court. The Shelby County Criminal Court denied the DNA motion. Consistent with Tennessee Supreme Court precedent, the court analyzed the effect the exculpatory DNA evidence would have had on the evidence presented at trial and concluded that it did not create a reasonable probability sufficient to undermine confidence in his conviction. Carruthers appealed to the Court of Criminal Appeals and asked the Tennessee Supreme Court to assume jurisdiction. It did so and affirmed. *Carruthers v. State*, No. W2026-00706-SC-RDM-PD, 2026 WL 1396729, at *3, *6 (Tenn. May 19, 2026) (per curiam).

Carruthers argues that the Tennessee Supreme Court's authoritative interpretation of the DNA Act violates his right to procedural due process in two ways. First, he contends that the court imposed an extratextual filing deadline when it denied his motion as untimely. And second, he asserts that the state court's authoritative interpretation of the DNA Act violates fundamental fairness by limiting the evidence to be considered to only the proof presented at trial.

We begin with the alleged timeliness requirement. To be sure, the DNA Act contains no filing deadline. *Griffin v. State*, 182 S.W.3d 795, 799 (Tenn. 2006). A person convicted of murder "may at any time[] file a petition requesting the forensic DNA analysis" of relevant evidence. Tenn. Code Ann. § 40-30-303.

Contrary to Carruthers's assertions, the Tennessee Supreme Court did not deny his motion by imposing an extratextual timeliness requirement unmoored from the DNA Act. Rather, it

denied his motion because it did not have original jurisdiction over its subject matter. *Carruthers*, 2026 WL 1396729, at *3 (noting that it denied Carruthers's motion for DNA testing because he "had not availed himself of an available procedural vehicle in the post-conviction court"). So his first challenge fails.

Next, we consider whether the DNA Act, and Tennessee courts' construction of it, violated Carruthers's due-process rights. We conclude that Carruthers has not shown a due-process violation.

This analysis proceeds just the same as the Fingerprint Act analysis. As we explained there, a "criminal defendant proved guilty after a fair trial does not have the same liberty interests as a free man." *Osborne*, 557 U.S. at 68. So, again, the State "has more flexibility in deciding what procedures are needed in the context of postconviction relief." *Id.* at 69. To that end, "due process does not dictate the exact form such assistance must assume." *Id.* (citation modified). Instead, we analyze Carruthers's right to due process "in light of the fact that he has already been found guilty at a fair trial, and has only a limited interest in postconviction relief." *Id.*

With these principles in mind, we must determine whether the deprivation of Carruthers's interest in obtaining DNA testing "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental, or transgresses any recognized principle of fundamental fairness in operation." *Id.* (citation modified). We will upset Tennessee's procedures for post-conviction DNA testing "only if they are fundamentally inadequate to vindicate the substantive rights provided." *Id.*

There is nothing fundamentally inadequate about the procedures Tennessee uses to effectuate an individual's access to post-conviction DNA testing. As discussed above, Tennessee courts begin with the presumption that the DNA results will yield favorable results. *Powers*, 343

S.W.3d at 55. And the DNA Act uses the same reasonable probability standard as the Fingerprint Act, which passes muster. *See Osborne*, 557 U.S. at 64–65, 69–72 (approving a similar standard). We have already held that Tennessee's "requirements for securing DNA analysis under the Act do not themselves create any unconstitutional deprivation." *Alley v. Key*, No. 06-5552, 2006 WL 1313364, at *2 (6th Cir. May 14, 2006).

But Carruthers nevertheless argues that it is fundamentally unfair to consider the impact of the DNA evidence on only the evidence presented at trial, as opposed to evidence newly discovered post-trial. The Fifth Circuit recently rejected this same argument. *See Reed v. Goertz*, 136 F.4th 535, 547–48 (5th Cir. 2025). It reasoned that "a holding that due process forces states to augment the trial record would be inconsistent with well-established precedent in other contexts." *Id.* For example, due process permits limiting federal habeas review to the record developed at trial. *See Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011). It "cannot possibly require more of a state court system." *Reed*, 136 F.4th at 548 (quoting *Smith v. Phillips*, 455 U.S. 209, 218 (1982)).

Carruthers cannot show that the Tennessee Supreme Court's interpretation of the DNA Act violates his limited interest in post-conviction relief, so his challenge fails.

## C.

Finally, we turn to Carruthers's challenge to Tennessee Supreme Court Rule 12.4(E). As before, Carruthers argues that the Tennessee Supreme Court irrationally interpreted its own rule by applying an unwritten timeliness requirement, which in turn violated his right to procedural due process.

Tennessee Supreme Court Rule 12.4(E) delineates the process for setting execution dates. *See generally* Tenn. Sup. Ct. R. 12.4. Only the Tennessee Supreme Court can change the date of an execution. *See id.*; *Black v. Strada*, 721 S.W.3d 223, 228 (Tenn. 2025) (per curiam). And once

the date is set, that court "will not grant a stay or delay of an execution date pending resolution of collateral litigation in state court unless the prisoner can prove a likelihood of success on the merits." Tenn. Sup. Ct. R. 12(4)(E); *Black*, 721 S.W.3d at 228 & n.7.

The Tennessee Supreme Court added language to Rule 12.4 after a lower court's temporary injunction imposed a precondition on a defendant's execution that operated to stay an execution order. *See Black*, 721 S.W.3d at 228. Rule 12.4(E) now states: "After a date of execution is set, any state court collateral litigation that would potentially affect the method or timing of execution must commence with the filing of a motion in this Court."

Relying on this addition to Rule 12, Carruthers filed his motion for DNA evidence directly with the Tennessee Supreme Court, believing it to have original jurisdiction over that subject matter under the new language. In denying the motion, the court clarified that Rule 12.4(E) "neither created a new procedural avenue nor granted this Court original jurisdiction to adjudicate" post-conviction discovery requests.

Carruthers argues that the Supreme Court's interpretation of Rule 12.4(E) deprived him of the process it purported to provide—that is, a forum for adjudicating collateral litigation that would affect the timing of his execution. The problem is that Carruthers's motion for DNA testing, by itself, does not affect the timing of his execution. So it does not fall within the rule's purview. Carruthers got the process he was due under the rule—dismissal for lack of jurisdiction. His procedural-due-process challenge thus fails.

## III.

To the extent Carruthers raises a right-to-access-the-courts claim, we reject it. "[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances." *Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731, 741 (1983). The federal

constitution "does not only protect one's right to physically enter the courthouse halls." *Swekel v. City of River Rouge*, 119 F.3d 1259, 1262 (6th Cir. 1997). Access to courts must also be "adequate, effective, and meaningful." *Bounds v. Smith*, 430 U.S. 817, 822 (1977).

Courts have grouped right-of-access challenges into two categories: pre-filing and post-filing. *See Swekel*, 119 F.3d at 1263–64. The first category encompasses "claims that systemic official action frustrates a plaintiff . . . in preparing and filing suits at the present time." *Christopher v. Harbury*, 536 U.S. 403, 413 (2002). These are forward-looking claims; a remedy in the plaintiff's favor would place him "in a position to pursue a separate claim for relief once the frustrating condition has been removed." *Id.* A pre-filing claim, for example, might challenge state regulations requiring habeas petitions to be approved first by a parole-board investigator. *Ex parte Hull*, 312 U.S. 546, 549 (1941). Another example is a challenge to a rule barring inmates from helping other inmates prepare petitions for post-conviction relief. *Johnson v. Avery*, 393 U.S. 483, 490 (1969).

By contrast, the post-filing category encompasses cases that "do not look forward to a class of future litigation, but backward to a time when specific litigation ended poorly." *Christopher*, 536 U.S. at 414. Such suits may concern, for example, police coverups that cause the loss of a meritorious case, thereby "render[ing] hollow [the plaintiff's] right to seek redress." *Bell v. City of Milwaukee*, 746 F.2d 1205, 1261 (7th Cir. 1984), *overruled in part on other grounds by Russ v. Watts*, 414 F.3d 783 (7th Cir. 2005). Whether forward-looking or backward-looking, the plaintiff must show that the relief sought "could make a difference in a nonfrivolous challenge to his convictions." *Sampson v. Garrett*, 917 F.3d 880, 882 (6th Cir. 2019).

We have "limit[ed] the right of access to the courts to pre-filing abuses in most instances." *Swekel*, 119 F.3d at 1263 n.1. When the alleged abuse occurs post-filing, "the aggrieved party is

already in court and that court usually can address the abuse, and thus, an access to courts claim typically will not be viable." *Id.* at 1263. In any event, the alleged acts underlying colorable right-of-access claims—in our court and other circuits—usually consist of some sort of clear misconduct by a state agent. These include police coverups, *see Bell*, 746 F.2d at 1261, and intentional concealment of evidence by a defendant, *Foster v. City of Lake Jackson*, 28 F.3d 425, 427 (5th Cir. 1994).

Carruthers offers no caselaw or factual allegation to support his right-of-access claims. As to his fingerprint-testing claim, Carruthers alleges that the Tennessee Court of Criminal Appeals violated his right of adequate, effective, and meaningful access to post-conviction remedies by upholding the trial court's denial of his motion for fingerprint analysis under the Fingerprint Act. We admit that the contours of this right are "nebulous." *Id.* at 430 (quotation omitted). But they are not boundless; and Carruthers identifies no instance where a state court's discretionary denial of a plaintiff's motion supported a right-of-access claim. The right of access is a right to "a litigating opportunity," not a specific outcome. *Christopher*, 536 U.S. at 414. Carruthers received that opportunity—when the post-conviction trial court permitted him to file his motion under the Fingerprint Act, and later when he appealed the trial court's denial to the Tennessee Court of Criminal Appeals.

As for his DNA testing claim, Carruthers alleges that the Tennessee Supreme Court's denial of his first DNA motion violated his right of access to the courts. But in denying the motion, the Tennessee Supreme Court merely clarified that the proper method for pursuing DNA testing was under the DNA Act, and not Tennessee Supreme Court Rule 12.4(E). Whether or not Carruthers agrees with this interpretation of the DNA Act is irrelevant to his right-of-access claim.

What matters is whether the DNA Act procedures offer "adequate, effective, and meaningful" access to the court. *See Bounds*, 430 U.S. at 822. He does not allege otherwise.

In response, Carruthers followed the correct procedures by filing a second motion pursuant to the DNA Act; that motion was pending at the time he filed his Amended Complaint. The Tennessee Supreme Court has since affirmed the Shelby County Criminal Court's denial of that motion. *See Carruthers*, 2026 WL 1396729, at *3.

**IV.**

Carruthers is not entitled to relief on his motion to stay execution. "[A] stay of execution is an equitable remedy." *Hill v. McDonough*, 547 U.S. 573, 584 (2006). So we consider the typical stay factors: (1) whether Carruthers has a likelihood of success on the merits of his appeal, (2) whether Carruthers will suffer irreparable harm in the absence of a stay, (3) whether a stay will substantially injure other interested parties, and (4) where the public interest lies. *See Nken v. Holder*, 556 U.S. 418, 434 (2009). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433–34. "The first two factors . . . are the most critical." *Id.* at 434.

The first stay factor weighs against Carruthers. For the reasons explained above, Carruthers has not shown a likelihood of success on his appeal of the district court's denial of his request for a preliminary injunction.

The second stay factor weighs in Carruthers's favor. He will "undeniably suffer irreparable harm" if his execution is not stayed. *In re Black*, 148 F.4th 375, 381 (6th Cir. 2025) (order).

Because Carruthers cannot show both a likelihood of success and irreparable injury, we need not reach the last two factors. *See Nken*, 556 U.S. at 435; *Bedford v. Bobby*, 645 F.3d 372, 377 (6th Cir. 2011) (per curiam). That said, those factors favor the State. Tennessee has a "strong

interest in enforcing its criminal judgments without undue interference from the federal courts."
*Hill*, 547 U.S. at 584.

**V.**

For the reasons above, we **AFFIRM** the district court and **DENY** Carruthers's motion to stay execution.